No. 23-12737

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

YIFAN SHEN, et al.,

*Plaintiffs–Appellants,*

v.

WILTON SIMPSON, in his official capacity as
Florida Commissioner of Agriculture, et al.,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida, No. 4:23-cv-208 (Winsor, A.)

## PLAINTIFFS–APPELLANTS' TIME-SENSITIVE MOTION
## FOR INJUNCTION PENDING APPEAL
## AND MOTION FOR EXPEDITED APPEAL

Ashley Gorski
Patrick Toomey
Sarah Taitz
Omar Jadwat
Sidra Mahfooz
Noor Zafar
**AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Cody Wofsy
**AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION**

Keliang (Clay) Zhu
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
   SULLIVAN, LLP**
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org

Daniel B. Tilley
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2707
dtilley@aclufl.org

Bethany Y. Li
Elizabeth Koo
Razeen Zaman
**ASIAN AMERICAN LEGAL
   DEFENSE AND EDUCATION
   FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
bli@aaldef.org

Nicholas L.V. Warren
**ACLU FOUNDATION OF FLORIDA**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

*Attorneys for Plaintiffs–Appellants*

Case No.: 23-12737                                    *Shen, et al., v. Simpson, et al.*

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Plaintiffs–Appellants certify that the following individuals and entities may have an interest in the outcome of this case or appeal:

1. American Civil Liberties Union Foundation, *Attorney for Plaintiffs– Appellants*

2. American Civil Liberties Union Foundation of Florida, *Attorney for Plaintiffs–Appellants*

3. Anti-Racism Center of LMU Loyola Law School, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

4. Aoki Center for Critical Race and Nation Studies at UC Davis School of Law, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

5. Arkansas, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

6. Asian Americans Advancing Justice – Asian Law Caucus, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

Case No.: 23-12737                                    *Shen, et al., v. Simpson, et al.*

7. Asian Americans Advancing Justice Atlanta, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

8. Asian American Legal Defense & Education Fund, *Attorney for Plaintiffs– Appellants*

9. Asian American Women's Political Initiative, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

10. Asian Law Alliance, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

11. Asian Pacific American Bar Association of Tampa, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

12. Bailey, Andrew, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

13. Bell, Daniel William, *Attorney for Defendants–Appellees*

14. Boston University Center for Antiracist Research, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

Case No.: 23-12737                                            *Shen, et al., v. Simpson, et al.*

15. Butler, Steve, *Attorney for U.S. Department of Justice, United States'*
    *Statement of Interest*

16. Carr, Christopher M., *Amicus Curiae, Amici Curiae Brief of the State of*
    *Idaho, et al.*

17. Center for Civil Rights and Racial Justice at the University Pittsburgh
    School of Law, *Amicus Curiae, Amici Curiae Brief of Racial Justice*
    *Centers, Affinity Bar and Professional Associations, and Civil Rights*
    *Advocacy Organizations*

18. Center for Immigration Law, Policy, and Justice at Rutgers Law School,
    *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar*
    *and Professional Associations, and Civil Rights Advocacy Organizations*

19. Center for Civil Rights and Racial Justice at the University Pittsburgh
    School of Law, *Amicus Curiae, Amici Curiae Brief of Racial Justice*
    *Centers, Affinity Bar and Professional Associations, and Civil Rights*
    *Advocacy Organizations*

20. Chang, Robert Seungchul, *Attorney for Amici Curiae Brief of Racial Justice*
    *Centers, Affinity Bar and Professional Associations, and Civil Rights*
    *Advocacy Organizations*

Case No.: 23-12737                                          *Shen, et al., v. Simpson, et al.*

21. Chin, Gabriel J., *Attorney for Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

22. Chinese for Affirmative Action, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

23. Clarke, Kristen, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

24. Conference of Asian Pacific American Law Faculty, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

25. Coody, Jason R, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

26. Costello, David M., *Attorney for Defendants–Appellees*

27. Cuison-Villazor, Rose, *Attorney for Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

28. DeHeng Law Offices, PC, *Attorney for Plaintiffs–Appellants*

29. Formello, John M., *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

Case No.: 23-12737                                    *Shen, et al., v. Simpson, et al.*

30. Idaho, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

31. Indiana, State of, *Amici Curiae Brief of the State of Idaho, et al.,*

32. Fitch, Lynn, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

33. Fitzgerald, Patricia, *Defendant–Appellee*

34. Florida Attorney General's Office, *Attorney for Defendants–Appellee*

35. Florida Office of the Solicitor General, *Attorney for Defendants–Appellee*

36. Forrester, Nathan Andrew, *Attorney for Defendants–Appellee*

37. Fred T. Korematsu Center for Law and Equality at Seattle University School of Law, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

38. Georgia, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho*

39. Gorski, Ashley Marie, *Attorney for Plaintiffs–Appellants*

40. Griffin, Tim, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

41. Handberg, Roger B., *Attorney for U.S. Department of Justice, United States' Statement of Interest*

42. Harwell Jr., Lacy R., *Attorney for U.S. Department of Justice, United States' Statement of Interest*

Case No.: 23-12737                                          *Shen, et al., v. Simpson, et al.*

43. Hispanic National Bar Association, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

44. Jackley, Marty J., *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

45. Japanese American Citizens League, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

46. Jarwala, Alisha, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

47. Kelly, J. Alex, *Defendant–Appellee*

48. Knudsen, Austin, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

49. Koo, Elizabeth L., *Attorney for Plaintiffs–Appellants*

50. Labrador, Raul R., *Attorney for Amici Curiae Brief of the State of Idaho, et al.*

51. Lapointe, Markenzy, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

52. Larizza, R.J., *Defendant*

Case No.: 23-12737                                    *Shen, et al., v. Simpson, et al.*

53. Latino Justice PRLDEF, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

54. Lee, Dexter, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

55. Li, Bethany Yue-Ping, *Attorney for Plaintiffs–Appellants*

56. Liu, Yongxin, *Plaintiff–Appellant*

57. Longfield, Timothy J., *Attorney for Amici Curiae Brief of the State of Idaho, et al.*

58. Maurer, Michael S., *Attorney for U.S. Department of Justice, United States' Statement of Interest*

59. Mississippi, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

60. Missouri, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

61. Montana, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

62. Moody, Ashley, *Attorney for Defendants–Appellees*

63. Multi-Choice Realty, LLC, *Plaintiff–Appellant*

Case No.: 23-12737                                        *Shen, et al., v. Simpson, et al.*

64. National Asian Pacific American Bar Association, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

65. New Hampshire, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

66. Nordby, Daniel E., *Attorney for Defendants–Appellees*

67. North Dakota, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

68. Pagnucco, Carrie, *Attorney for U.S. Department of Justice, United States' Statement of Interest*

69. Quinn Emanuel Urquhart & Sullivan, LLP, *Attorney for Plaintiffs–Appellants*

70. Reyes, Sean, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

71. Rodriguez, Madeleine Kristine, *Attorney for Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

72. Rokita, Theodore E., *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

73. Rundle, Katherine Fernandez, *Defendant*

74. Sayler, Erik Louis, *Attorney for Defendants–Appellees*

Case No.: 23-12737                                         *Shen, et al., v. Simpson, et al.*

75. Schenck, Robert Scott, *Attorney for Defendants–Appellees*

76. Shaffer, Derek Lawrence, *Attorney for Plaintiffs–Appellants*

77. Shen, Yifan, *Plaintiff–Appellant*

78. Shutts & Bowern, LLP, *Attorney for Defendants–Appellees*

79. Simpson, Wilton, *Defendant–Appellee*

80. South Carolina, State of, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

81. South Dakota, State of, *Amicus Curiae, Amicus Curiae Brief of the State of Idaho, et al.*

82. South Asian Bar Association of North America, *Amicus Curiae, Amici Curiae Brief of Racial Justice Centers, Affinity Bar and Professional Associations, and Civil Rights Advocacy Organizations*

83. Taitz, Sarah Michelle, *Attorney for Plaintiffs–Appellants*

84. Tang, Haiyan, *Attorney for Plaintiffs–Appellants*

85. Tilley, Daniel Boaz, *Attorney for Plaintiffs–Appellants*

86. Toomey, Patrick Christopher, *Attorney for Plaintiffs–Appellants*

87. Turner, Joshua Nathaniel, *Attorney for Amici Curiae Brief of the State of Idaho, et al.*

88. U.S. Department of Justice, *United States' Statement of Interest*

89. Utah, State of, *Amici Curiae Brief of the State of Idaho, et al.*

90. Wang, Xinxi, *Plaintiff–Appellant*

91. Warren, Nicholas, *Attorney for Plaintiffs–Appellants*

92. Whitaker, Henry Charles, *Attorney for Defendants–Appellees*

93. Wilson, Alan, *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

94. Winsor, Hon. Allen, *District Court Judge for the Northern District of Florida and District Court Judge in the Above-Captioned Case*

95. Wofsy, Cody H., *Attorney for Plaintiffs–Appellants*

96. Wold, Theodore J., *Attorney for Amicus Curiae Brief of the State of Idaho, et al.*

97. Worrell, Monique H., *Defendant*

98. Wrigley, Drew H., *Amicus Curiae, Amici Curiae Brief of the State of Idaho, et al.*

99. Xu, Zhiming, *Plaintiff–Appellant*

100. Zaman, Razeen J., *Attorney for Plaintiffs–Appellants*

101. Zhu, Keliang, *Attorney for Plaintiffs–Appellants*

Plaintiffs–Appellants further state that no publicly traded company or corporation has an interest in the outcome of the case or appeal. Plaintiffs–Appellants certify that Multi-Choice Realty, LLC has no parent corporation, and no

Case No.: 23-12737                                    *Shen, et al., v. Simpson, et al.*

publicly held corporation owns 10% or more of its stock. The remaining Plaintiffs–

Appellants are individual persons.


Dated: August 25, 2023                    <u>*/s/ Ashley Gorski*</u>
                                          Ashley Gorski
                                          American Civil Liberties Union
                                             Foundation

                                          *Attorney for Plaintiffs–Appellants*

## TABLE OF CONTENTS

TIME-SENSITIVE MOTION FOR INJUNCTION PENDING APPEAL
AND FOR EXPEDITED APPEAL ...........................................................1

INTRODUCTION ..................................................................................2

STATEMENT OF FACTS ......................................................................3

ARGUMENT .........................................................................................5

I.     Plaintiffs are likely to succeed on the merits. ...............................5

       A.    SB 264 violates the Fair Housing Act. .................................6

       B.    SB 264 violates the Equal Protection Clause. .....................13

       C.    SB 264 is preempted. ........................................................15

       D.    SB 264 is unconstitutionally vague. ...................................21

II.    The equities strongly favor Plaintiffs. .........................................25

III.   Appeal of the district court's ruling should be expedited. ............27

CONCLUSION ....................................................................................27

i

# TABLE OF AUTHORITIES

## Cases

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*,
425 F.3d 964 (11th Cir. 2005) ................................................................25

*Bernal v. Fainter*,
467 U.S. 216 (1984)................................................................................13

*Bolden-Hardge v. Off. of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023) ...............................................................12

*Chamber of Com. of U.S. v. Whiting*,
563 U.S. 582 (2011)................................................................................18

*Children's All. v. City of Bellevue*,
950 F. Supp. 1491 (W.D. Wash. 1997) ...................................................7

*Club Madonna Inc. v. City of Miami Beach*,
42 F.4th 1231 (11th Cir. 2022) .............................................................19

*Colautti v. Franklin*,
439 U.S. 379 (1979)................................................................................22

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)....................................................................... passim

*Davis v. Guam*,
932 F.3d 822 (9th Cir. 2019) ..................................................................8

*Dimanche v. Brown*,
783 F.3d 1204 (11th Cir. 2015) ..............................................................7

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022)...........................................................................22

*Doe v. Snyder*,
101 F. Supp. 3d 672 (E.D. Mich. 2015) ...............................................23

*Ebsco Gulf Coast Dev., Inc. v. Salas*,
No. 15-cv-586, 2016 WL 11189984 (N.D. Fla. Sept. 29, 2016).........25

*Fac. Senate of Fla. Int'l Univ. v. Winn*,
   616 F.3d 1206 (11th Cir. 2010) ..........................................................18

*Fla. Action Comm., Inc. v. Seminole Cnty.*,
   212 F. Supp. 3d 1213 (M.D. Fla. 2016).............................................24

*Fla. Businessmen for Free Enter. v. City of Hollywood*,
   648 F.2d 956 (5th Cir. 1981) ................................................................5

*Ga. Latino All. for Hum. Rts. v. Governor of Georgia*,
   691 F.3d 1250 (11th Cir. 2012) ..........................................................20

*Graham v. Richardson*,
   403 U.S. 365 (1971)............................................................................13

*Gresham v. Windrush Partners, Ltd.*,
   730 F.2d 1417 (11th Cir. 1984) ..........................................................25

*Guinn v. United States*,
   238 U.S. 347 (1915)..............................................................................8

*Hill v. Colorado*,
   530 U.S. 703 (2000)............................................................................23

*Hines v. Davidowitz*,
   312 U.S. 52 (1941)..............................................................................19

*Holden v. Hardy*,
   169 U.S. 366 (1898)............................................................................24

*Horizon House Developmental Servs., Inc. v. Twp. of Upper
   Southampton*,
   804 F. Supp. 683 (E.D. Pa. 1992)........................................................8

*Jackson v. Okaloosa Cnty.*,
   21 F.3d 1531 (11th Cir. 1994) ..............................................................9

*Jefferson County v. Acker*,
   210 F.3d 1317 (11th Cir. 2000) ................................................... 13, 14

*Johnson v. U.S. Dep't of Agric.*,
   734 F.2d 774 (11th Cir. 1984) ............................................................25

*Juarrero v. McNayr*,
    157 So. 2d 79 (Fla. 1963) ...................................................................22

*Larkin v. State of Mich. Dep't of Soc. Servs.*,
    89 F.3d 285 (6th Cir. 1996) ..............................................................9

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) ........................................................6

*McWright v. Alexander*
    982 F.2d 222 (7th Cir. 1992) ............................................................8

*Mock v. Bell Helicopter Textron, Inc.*,
    373 F. App'x 989 (11th Cir. 2010) ..................................................12

*Namba v. McCourt*,
    204 P.2d 569 (Or. 1949) ..................................................................14

*Nat'l Foreign Trade Council v. Natsios*,
    181 F.3d 38 (1st Cir. 1999).............................................................21

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
    715 F.3d 1268 (11th Cir. 2013) ............................................... passim

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142
    (9th Cir. 2013)...................................................................................7

*Perez v. Perez*,
    164 So. 2d 561 (Fla. 3d DCA 1964)...............................................22

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014)........................................................18

*Resendiz v. Exxon Mobil Corp.*,
    72 F.4th 623 (4th Cir. 2023) .............................................................8

*Rice v. Cayetano*,
    528 U.S. 495 (2000).........................................................................8

*Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*,
    46 F.4th 1268 (11th Cir. 2022) ......................................................11

*Schaw v. Habitat for Human. of Citrus Cnty., Inc.*,
938 F.3d 1259 (11th Cir. 2019) ..........................................................11

*Sec'y, U.S. Dep't of Hous. & Urb. Dev. v. Blackwell*,
908 F.2d 864 (11th Cir. 1990) ..............................................................9

*Terrace v. Thompson*, 263 U.S. 197 (1923)............................................13

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
576 U.S. 519 (2015)....................................................................... 6, 12

*United States v. Alabama*,
691 F.3d 1269 (11th Cir. 2012) ..........................................................16

*United States v. Petrillo*,
332 U.S. 1 (1947)...............................................................................24

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) (en banc) ...............................................11

*Vill. of Arlington Heights v. Metro. Hous. Dev. Co.*,
429 U.S. 252 (1977)...........................................................................15

*Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*,
455 U.S. 489 (1982)...........................................................................21

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)...........................................................................24

*Zschernig v. Miller*,
389 U.S. 429 (1968)...........................................................................18

## **<u>Statutes</u>**

42 U.S.C. § 3604 ...................................................................................6

42 U.S.C. § 3605 ...................................................................................6

42 U.S.C. § 3615 ...................................................................................6

50 U.S.C. § 4565 .......................................................................... passim

Fla. Stat. § 48.193 ................................................................................22

Fla. Stat. § 692.201 ...........................................................................23

Fla. Stat. § 692.203 .........................................................................4, 5

Fla. Stat. § 692.204 ..................................................................... 4, 5, 25

Foreign Investment Risk Review Modernization Act of 2018, Pub. L. 115-232, 132 Stat. 1636 ...............................................................15

**Regulations**

31 C.F.R. Part 802....................................................................................15

31 C.F.R. § 802.701 .............................................................................16

31 C.F.R. § 802.901 .............................................................................20

**Other Sources**

Hatzipanagos, Rachel, *Laws Banning Chinese from Buying Property Dredge Up Old History*, Wash. Post, Aug. 21, 2023, https://www.washingtonpost.com/nation/2023/08/18/florida-chinese-land-laws...............................................................................17

Rappeport, Alan, *Spreading State Restrictions on China Show Depths of Distrust in the U.S.*, N.Y. Times, Aug. 21, 2023, https://www.nytimes.com/2023/08/21/us/politics/china-restrictions-distrust.html ...................................................................17

United Nations Statistics Division, UNData, China, Social Indicators Concerning "International migrant stock," https://data.un.org/en/iso/cn.html .......................................................7

## **TIME-SENSITIVE**
## **MOTION FOR INJUNCTION PENDING APPEAL**
## **AND FOR EXPEDITED APPEAL**

Plaintiffs-Appellants move for an injunction pending appeal pursuant to Federal Rule of Appellate Procedure 8 to halt the implementation of portions of Florida Senate Bill 264, codified at Florida Statutes §§ 692.201, 692.203-204 ("SB 264"). The statute restricts the ability of people whose "domicile" is in China to purchase real property in the state. Plaintiffs seek to enjoin the following sections of the statute: in Section 692.204(1)(a), only the provisions applying to individuals "domiciled" in China under subsections (1)(a)(4), (1)(a)(5); in Section 692.201(4), only the provisions applying to individuals "domiciled" in China under subsections (4)(d), (4)(e); and Sections 692.203-204 insofar as they apply to residential real estate. Based on the ongoing harms described below, Plaintiffs also move for an order expediting the appeal pursuant to I.O.P. 3 of Eleventh Circuit Rule 27-1.[1]

---

[1] Defendants in this matter include both state officers sued in their official capacity and state attorney defendants. On July 5, 2023, the district court granted a joint motion of Plaintiffs and the state attorney defendants to stay proceedings as to those particular defendants. *Shen v. Simpson*, No. 4:23-cv-00208-AW, ECF No. 59. The state officer defendants (hereinafter, "the State" or "Defendants-Appellees") opposed Plaintiffs' motion for a preliminary injunction and oppose Plaintiffs' motion for an injunction pending appeal.

**INTRODUCTION**

A new Florida law, SB 264, forbids people who are "domiciled" in China from purchasing homes in the state, with only extremely narrow exceptions. It is currently wreaking havoc on the lives and plans of Plaintiffs and thousands of others across Florida—as well as roiling the real estate market. Plaintiff Zhiming Xu is scheduled to close on a home *next month* and, absent relief, will be forced to cancel his contract for a unique, irreplaceable property. Plaintiff Multi-Choice Realty, a brokerage, is already losing customers. SB 264 also requires all purchasers to attest under penalty of perjury that they are not domiciled in China or otherwise comply with the law's vague terms—deterring lawful purchases and casting suspicion over any prospective purchaser of Asian descent. Because of SB 264, some lenders are now refusing to deal with *any* Chinese national. In addition to these harms, the statute perpetuates odious stereotypes by treating Chinese people as mere instruments of the Chinese government. Meanwhile, the State has no justification for restricting purchases of homes by Plaintiffs or others who live in Florida. The balance of the equities weighs decisively in Plaintiffs' favor, particularly given the limited nature of the injunction that Plaintiffs seek.

The district court erroneously held that Plaintiffs are unlikely to prevail on the merits. But SB 264 mandates egregious national-origin discrimination, in violation of the Fair Housing Act and Equal Protection Clause. *See* U.S. Statement of Interest,

App.231-53. The statute's use of "domicile" is simply a fig leaf for national origin; indeed, 99.9% of the people "domiciled" in China are of Chinese national origin. Yet the district court concluded that SB 264 is *neutral* as to national origin, ignoring common sense and longstanding precedent.

Despite deeming Plaintiffs' preemption claim "closer" than the others, the district court nevertheless wrongly rejected it. Not only does Florida's law squarely conflict with the federal regime governing national-security review of real estate transactions, but it interferes with the federal foreign-affairs power in precisely the way this Court has warned against. SB 264 has "select[ed] by name a foreign country on which it ha[s] declared, in effect, some kind of economic war." *Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1287 (11th Cir. 2013).

To preserve the pre-SB 264 status quo, and to prevent irreparable harms, this Court should enjoin the challenged provisions pending appeal.

## STATEMENT OF FACTS

Plaintiffs, four individuals of Chinese descent and a real estate business, live, study, and work in Florida. *See* App.103, 122, 147, 153, 159. The individual plaintiffs are not citizens or permanent residents of the United States but have actively contributed to the State and its economy for years. *See* App.103, 122, 147, 153.

SB 264 took effect on July 1, 2023. The law creates two separate sets of restrictions on land ownership in Florida. The first set of restrictions bars people from seven "foreign countries of concern," including China, from owning or acquiring real property within ten miles of a military installation or a critical infrastructure facility. Fla. Stat. § 692.203.

Most relevant here is the second set of prohibitions, which targets Chinese people for even more sweeping restrictions and severe penalties. The statute bars "[a]ny person who is domiciled in the People's Republic of China and who is not a citizen or lawful permanent resident of the United States" from purchasing or owning *any* real property in the state. Fla. Stat. § 692.204(1)(a)(4). The sole exception is that people with a valid non-tourist visa or who have been granted asylum are permitted to purchase one residential real property—but only if the property is less than two acres and not within five miles of a military installation. *Id.* § 692.204(2). The law also requires people domiciled in China to register their existing property with the State, with civil penalty and forfeiture consequences for failure to comply. *Id.* § 692.204(4).

Chinese purchasers and those who sell to Chinese persons in violation of the statute are subject to significant criminal penalties. *Id.* § 692.204(8)-(9). Notably, these penalties are more severe than those applicable to people from other "countries

4

of concern" who violate the law. *Id.* § 692.203(8)-(9). For purchasers, the law's criminal penalties have no mens rea requirement. *Id.* §§ 692.204(8) .203(8).

SB 264 is already causing and will continue to cause Plaintiffs irreparable harm, including by forcing Plaintiffs Xu and Yifan Shen to cancel pending purchases of new homes. App.104-05, 123-24. Plaintiff Xu is scheduled to close on a home next month, and Plaintiff Shen is scheduled to close in December 2023. *Id.* Other irreparable harms include Plaintiff Multi-Choice Realty's loss of significant business; the discriminatory requirement that Plaintiffs register their existing properties with the State under threat of penalties; and anti-Asian discrimination and stigmatization resulting from the law. App.80, 106, 123, 148, 154, 161, 220-21.

The district court denied a preliminary injunction on August 17, App.1-52, and denied an injunction pending appeal on August 23, App.53-55.

## ARGUMENT

## I.    **Plaintiffs are likely to succeed on the merits.**

An injunction pending appeal requires consideration of whether (1) the movant is likely to prevail on the merits; (2) irreparable harm to the movant; (3) any harm to opposing parties; and (4) the public interest. *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 957 (5th Cir. 1981). Where, as here, the balance of the equities weighs heavily in favor of an injunction, the movant need only show a "substantial case on the merits," rather than a probability of success on

5

the merits. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022).

### A.    SB 264 violates the Fair Housing Act.

The Fair Housing Act ("FHA") prohibits housing practices that discriminate based on national origin and race, 42 U.S.C. §§ 3604, 3605, and state laws that "require or permit" any discriminatory housing practice, *id.* § 3615; *see Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) (FHA's "central purpose" is to "eradicate discriminatory policies" in housing). As Plaintiffs and the United States explained below, SB 264 blatantly violates the FHA in several respects. *See* U.S. Statement of Interest, App.231-46.

**First**, SB 264 violates the FHA because it facially discriminates based on national origin by barring Chinese people from home purchases. The district court held that SB 264 does not discriminate based on national origin because it applies based on Chinese "domicile." App.19. But for the FHA analysis, the use of "domicile" is essentially indistinguishable from national origin. The vast majority of individuals domiciled in a country were typically born there—and that is certainly true of China. Yet the district court refused to accept this straightforward proposition. *Id.* Even if statistics were required at this stage, it is not reasonably disputable that China's population is overwhelmingly of Chinese origin—99.9%,

6

according to the United Nations.[2] Thus, with respect to China, SB 264 "is effectively a birthplace classification." *Id*.

The district court's analysis is also contrary to case law forbidding the use of fig leaves to discriminate against protected classes. In cases involving the FHA and similar statutes, courts have long recognized the impermissibility of discrimination based on "proxies." *See, e.g.*, *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013) ("Proxy discrimination is a form of facial discrimination."); *Children's All. v. City of Bellevue*, 950 F. Supp. 1491, 1496 (W.D. Wash. 1997). Were it otherwise, anti-discrimination laws could easily be evaded by creative drafting. Here, "domicile" is no more than camouflage for regulating Chinese people—and notably, the State has advanced no rationale for the law's peculiar use of "domicile" as a trigger for its prohibitions.

The district court further erred by reasoning that "domicile" could only be a proxy if it is "practically indistinguishable" from national origin. App.19. As explained above, the two categories *are* practically indistinguishable—but regardless, that is not the relevant legal test. The Supreme Court has never required

---

[2] United Nations Statistics Division, UNData, China, Social Indicators Concerning "International migrant stock," https://data.un.org/en/iso/cn.html; *see Dimanche v. Brown*, 783 F.3d 1204, 1213 n.1 (11th Cir. 2015) ("Absent some reason for mistrust, courts have not hesitated to take judicial notice of agency records and reports." (citation omitted)).

proxies to be "practically indistinguishable" from a protected characteristic. *See Rice v. Cayetano*, 528 U.S. 495, 514, 516-17 (2000) (holding "ancestry" requirement an impermissible proxy for "race," even though the two categories were not coextensive); *Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 628 (4th Cir. 2023) (requiring mere "overlap"). In this analysis, it does not matter that some people of Chinese origin are not domiciled in China. *Rice v. Cayetano*, 528 U.S. at 516-17. Likewise, it does not matter that an exceedingly small number of people domiciled in China are not of Chinese origin; that will frequently be true of proxies. *See, e.g.*, *Guinn v. United States*, 238 U.S. 347, 364-65 (1915) (striking "grandfather clause" in which ancestry functioned as an proxy for race, even though some African Americans' ancestors were eligible to vote in various northern states, as explained in *Davis v. Guam*, 932 F.3d 822, 842 (9th Cir. 2019)); *Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*, 804 F. Supp. 683, 694 (E.D. Pa. 1992), *aff'd*, 995 F.2d 217 (3d Cir. 1993). Just as discrimination based on grey hair is a proxy for age, despite the occasional grey youth, here the rare exception proves the rule. *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992).

Without this Court's intervention, the district court's analysis risks eviscerating the FHA's protections. It would allow state and local governments— and any property owner—to freely discriminate based on national origin, simply by

labeling it "domicile"-based discrimination. Because SB 264 discriminates on its face, using the thinnest proxy for national origin, it violates the FHA.[3]

**Second**, SB 264 also violates the FHA because federal law prohibits housing practices that *intentionally* discriminate based on protected characteristics. *See, e.g.*, *Jackson v. Okaloosa Cnty.*, 21 F.3d 1531, 1542 (11th Cir. 1994); *Sec'y, U.S. Dep't of Hous. & Urb. Dev. v. Blackwell*, 908 F.2d 864, 871 (11th Cir. 1990). Regardless of whether the Court analyzes the proxy issue under the rubric of facial or intentional discrimination, the answer is the same: SB 264 discriminates on the basis of national origin.

Plaintiffs have established discriminatory intent through direct and circumstantial evidence. *First*, it was doubtless known and foreseeable to Florida legislators and Governor DeSantis that Section 692.204 of this statute would overwhelmingly, if not exclusively, bar people who are Chinese, and who are Asian, from purchasing homes.

*Second,* legislators and the governor understood that the statute reached far beyond the Chinese government and its agents, *see, e.g.*, App.196 (staff bill analysis

---

[3] Although some circuits have held that facial discrimination based on disability may be permitted under the FHA in narrow circumstances, *see, e.g.*, *Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290 (6th Cir. 1996), those circumstances are not applicable here, and Plaintiffs are aware of no FHA case permitting facial discrimination based on national origin.

explaining that prohibitions apply to "persons domiciled in China"), yet they never offered a justification for casting such a wide net. Rather, their stated justification has focused entirely on the Chinese *government*. *See, e.g.,* App.192 (Governor DeSantis stating that the bill seeks to "follow[] through on our commitment to crack down on Communist China"). Indeed, following the district court's ruling, Governor DeSantis tweeted that the Department of Justice "sided with Communist China against Florida's law prohibiting CCP-tied entities from buying land in Florida,"[4] even though Plaintiffs reside in Florida and are neither members of the Chinese government nor members of the CCP. Governor DeSantis and the statute itself have relied on pernicious stereotypes to wrongfully conflate people merely domiciled in China with their government—treating Chinese people as inherently suspicious and as mere instruments of the CCP.

*Third*, narrower alternatives were available to the state. Although the district court claimed that Plaintiffs cited no such alternatives, App.32, that is incorrect. *See* Pls. Reply 9, ECF No. 65 (explaining that the legislature "easily could have limited the law to foreign powers and their agents"). State officials specifically chose instead to sweep in countless ordinary Chinese people. *See, e.g.*, App.188 (Governor

---

[4] Governor DeSantis (@GovRonDeSantis), Twitter (Aug. 17, 2023, 5:57 PM), https://twitter.com/GovRonDeSantis/status/1692294605352415425.

DeSantis arguing that restrictions on purchases of residential property should not be limited to the Chinese government).

Because SB 264's proponents "were aware of the likely disproportionate effect of the law on" Chinese people and Asians, and "nonetheless passed the bill without adopting a number of proposed ameliorative measures that might have lessened this impact," and because the statute's sweeping regulation of ordinary people "is only tenuously related," if at all, "to the legislature's stated purpose," the natural conclusion is that those proponents sought to discriminate against purchasers on the ground of national origin and race. *Veasey v. Abbott*, 830 F.3d 216, 236-37 (5th Cir. 2016) (en banc). Certainly Plaintiffs have shown that those considerations "played some role" in the State's choice to frame this statute so broadly, establishing an FHA violation. *Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*, 46 F.4th 1268, 1281 (11th Cir. 2022).

**Third**, regardless of intent, SB 264 violates the FHA because it has a disparate impact on people whose national origin is in China and who are Asian, and the law is not necessary to advance a legitimate interest. *See Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1274 (11th Cir. 2019) (plaintiff can demonstrate a discriminatory effect by showing that a policy "makes housing options significantly more restrictive for members of a protected group"). Although the district court faulted Plaintiffs for failing to provide statistics about the disparate

11

impact of the law, App.37-38, statistics are not required—particularly because, at this stage, Plaintiffs need only establish a likelihood of success. It is exceedingly likely that a law that discriminates against people domiciled in China has a disparate impact on Chinese people such as Plaintiffs—indeed, it is hard to see how the result could be otherwise. *See Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023) ("[S]tatistics are not strictly necessary . . . where a disparate impact is obvious.").

The district court further erred in holding that Plaintiffs had failed to show that SB 264 is an "artificial, arbitrary, and unnecessary barrier" to housing. App.38. This is not Plaintiffs' burden under the FHA; instead, the *State* must establish that its law is "necessary" to advance a legitimate interest, and it has failed to do so. *See Inclusive Cmtys.*, 576 U.S. at 541. In any event, Plaintiffs have explained that SB 264 does not advance public safety or any other legitimate interest, *see also* U.S. Statement of Interest, App.245, 251, and that alternatives would have less disparate impact—such as a law limited to foreign powers that does not restrict the availability of housing for ordinary Florida residents like Plaintiffs.

Finally, the court was wrong to fault Plaintiffs for initially raising the disparate-impact argument in a footnote. App.37. Plaintiffs' opening brief repeatedly referred to discriminatory impact, *see* Pls. Br. 21-23; the footnote was substantial and included case citations, *see id.* at 26-27 n.9; and Plaintiffs elaborated on this

argument in their reply, *see* Pls. Reply 13. *Cf. Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (argument waived where raised "in passing in a footnote only and [appellant] does not elaborate on it in any further detail in either one of its briefs").

### B.    SB 264 violates the Equal Protection Clause.

The Fourteenth Amendment "entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371 (1971). SB 264 violates the Equal Protection Clause on several grounds. **First**, it expressly discriminates based on national origin, as discussed *supra*; and it fails strict scrutiny, as the State has conceded. *See* App.18.

**Second**, the statute expressly discriminates based on alienage, as the district court recognized. App.20. Yet the district court erred in relying on a set of 100-year-old Supreme Court cases to hold this discrimination constitutionally permissible. *See* App.20-26 (citing *Terrace v. Thompson*, 263 U.S. 197 (1923)). *Terrace* and its companion cases have been superseded by decades of precedent applying strict scrutiny to state laws discriminating based on alienage. *See, e.g.*, *Bernal v. Fainter*, 467 U.S. 216, 218-22 (1984). Critically, moreover, *Terrace* is not "directly control[ling]" here because it is factually distinguishable. *Jefferson County v. Acker*, 210 F.3d 1317, 1320-21 (11th Cir. 2000). Unlike the law in *Terrace*, which the Supreme Court characterized as not based on "race and color," 263 U.S. at 220, SB

13

264 expressly singles out people domiciled in particular countries and applies uniquely harsh restrictions and penalties on people domiciled in a single country. *See, e.g.*, *Namba v. McCourt*, 204 P.2d 569, 582 (Or. 1949) (observing that the Equal Protection Clause would no longer permit an alien land law primarily affecting Japanese people, and distinguishing *Terrace* as permitting only even-handed discrimination against all non-citizens).

This Court has made clear that lower courts are under no obligation to extend a discredited Supreme Court case "by even a micron." *Acker*, 210 F.3d at 1320-21. Yet the district court extended *Terrace* by miles—applying it to a novel statute that expressly penalizes people domiciled in China. Even if this Court concludes that SB 264 does not facially discriminate based on national origin, the statute's explicit focus on China and other specific countries takes it far outside of *Terrace*'s ambit.

Finally, even if the standard from *Terrace* applied, SB 264's classifications are "arbitrary" and "unreasonable." *Cf.* App.22. The statute does not advance public safety, *see* U.S. Statement of Interest, App.251, and the State has provided no justification for restrictions on Florida residents "domiciled" in China. It has presented no evidence—none—of a nexus between ownership of homes by Chinese people in Florida and purported harm to national security.

**Third**, SB 264 violates equal protection because of its discriminatory intent and effects based on national origin, alienage, race, and ethnicity. *See* Part I.A,

14

*supra*. Discrimination against Chinese people was, at a minimum, a "motivating factor" driving the law's breadth. *Vill. of Arlington Heights v. Metro. Hous. Dev. Co.*, 429 U.S. 252, 265-66 (1977).

### C.    SB 264 is preempted.

SB 264 rejects and displaces Congress's carefully calibrated regime governing real estate purchases by foreign nationals. *See* 50 U.S.C. § 4565; 31 C.F.R. Part 802. In so doing, it upends and interferes with Congress's specific judgments about national security and foreign affairs; imposes dramatically more severe penalties; usurps from the President the authority to address national security and foreign policy concerns; and "unilaterally select[s] by name a foreign country" for a State declaration of "economic war." *Odebrecht*, 715 F.3d at 1287 (cleaned up). Under this Court's and Supreme Court precedents, the State's extraordinary claim to dominance in a quintessentially federal arena is conflict preempted. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

Under Section 4565, the Committee for Foreign Investment in the United States ("CFIUS") is empowered to review, and the President is empowered to block, domestic transactions by foreign nationals. App.45-46. In 2018, Congress enacted and President Trump signed the Foreign Investment Risk Review Modernization Act of 2018 ("FIRRMA"), Pub. L. 115-232, 132 Stat. 1636, which expanded this authority to include real estate purchases. But Congress carefully balanced the

perceived need for national security review against other considerations, emphasizing that "foreign investment provides substantial economic benefits to the United States, thus "*enhancing* national security." FIRRMA § 1702(b)(1) (emphasis added). Florida disagrees with the balance Congress struck, and has stepped in to replace that approach with its own far more draconian restrictions for Chinese purchasers.

The district court acknowledged Plaintiffs' preemption claim was the "close[st]" in its view, but nevertheless wrongly rejected it. App.42. Primarily, the court sought to limit *Crosby* and *Odebrecht* to federal statutes dealing "principally with international diplomacy," and asserted that this federal regime "address[es] principally security issues." App.47-48. But *Crosby* and *Odebrecht* apply here with equal force. *See United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012) (applying *Crosby* to immigration context). Congress delegated the final decision about whether to block a transaction under FIRRMA to the President. 50 U.S.C. § 4565(d)(4); 31 C.F.R. § 802.701. Florida has instead arrogated that power to itself—claiming the authority to decide which countries are threats and adversaries, and how best to address those threats. Permitting every state to declare "economic war" on its preferred set of enemy nations by barring their nationals from purchasing homes "undermines the substantial discretion Congress has afforded the President" in addressing the national security and foreign policy implications of real estate

16

purchases—thereby "weaken[ing] the President's ability to speak for the Nation with one voice in dealing with" China and other nations. *Odebrecht*, 715 F.3d at 1272, 1281 (cleaned up); *see also Crosby*, 530 U.S. at 381.

Moreover, the district court was wrong to downplay the role of foreign affairs considerations in the federal regime. Congress contemplated an important role for such considerations in the President's ultimate decision whether to block transactions. 50 U.S.C. § 4565(f)(9)(A)-(B), (11). And insofar as CFIUS is focused on "security issues," App.48, those are *national* security threats posed by *foreign powers* and their nationals. Whether and how to limit such foreign economic activity on national security grounds necessarily involves careful consideration of the foreign policy context and implications.

After all, such decisions will frequently have repercussions in the realm of foreign policy—as has already been the case here. Since SB 264 was enacted, the Chinese Embassy has issued multiple statements objecting to the statute for politicizing trade and investment issues and fueling Asian hatred in the United States.[5] This is precisely why the D.C. Circuit concluded that judicial review of the

---

[5] *See, e.g.*, Rachel Hatzipanagos, *Laws Banning Chinese from Buying Property Dredge Up Old History*, Wash. Post, Aug. 21, 2023, https://www.washingtonpost.com/nation/2023/08/18/florida-chinese-land-laws; *see also* Alan Rappeport, *Spreading State Restrictions on China Show Depths of Distrust in the U.S.*, N.Y. Times, Aug. 21, 2023, https://www.nytimes.com/2023/08/21/us/politics/china-restrictions-distrust.html

President's determination under CFIUS that a transaction is a national security threat, and decision to block that transaction, "would require us to exercise judgment *in the realm of foreign policy* and national security." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314 (D.C. Cir. 2014) (emphasis added). A system so intimately tied up with foreign policy judgments is an exclusively federal one, just like the sanctions regimes at issue in *Odebrecht* and *Crosby*.

Nor is the State's regime divorced from foreign policy, as the district court suggested. App 49. As noted above, the statute itself and various statements made by its sponsors expressly tie it to *foreign policy* goals, namely "taking action to stand against the United States' greatest geopolitical threat—the Chinese Communist Party," and "following through on our commitment to crack down on Communist China." App.192 (remarks of Gov. DeSantis). While States may have authority to enact "security" regulations in a general and even-handed way, measures that single out particular countries and nationalities—even if framed in terms of security concerns—infringe on the federal government's foreign affairs powers. *See Zschernig v. Miller*, 389 U.S. 429, 440-41 (1968). The district court's focus on

_____

("'The Chinese government is especially concerned about a proliferation of state-level restrictions'" which "is likely to complicate diplomacy with China and could draw retaliation").

whether the statute was intended to "exert diplomatic pressure," App.49, thus misses the point.[6]

The district court likewise failed to meaningfully address Florida's rejection of Congress's "deliberate choice," *Club Madonna Inc. v. City of Miami Beach*, 42 F.4th 1231, 1254 (11th Cir. 2022), to specifically exempt *all* transactions involving a single housing unit from CFIUS review. 50 U.S.C. § 4565(a)(4)(C)(i). That judgment reflects the reality that the purchase of a home is highly unlikely to pose national security concerns, but regulating every such transaction would wreak major economic and foreign policy harms and invite discrimination, *cf. Crosby*, 530 U.S. at 377-78 (noting Congress's "deliberate effort to steer a middle path"); *Hines v. Davidowitz*, 312 U.S. 52, 73 (1941) (similar). Yet Florida's law *entirely* bans real estate purchases, including of homes, for most Chinese nationals, and the sole exception for home purchases is severely limited.

Because Florida's law "does not countenance . . . the federal regime's exceptions," it "squarely conflicts with the more nuanced federal regime." *Odebrecht*, 715 F.3d at 1282. In response, the district court suggested that SB 264

---

[6] By contrast, in *Faculty Senate of Florida International University v. Winn*, the statute applied to "countries *determined by the federal government (not especially selected by Florida)* to sponsor terrorism." 616 F.3d 1206, 1210-11 (11th Cir. 2010) (emphasis added); *see also Chamber of Com. of U.S. v. Whiting*, 563 U.S. 582, 601 (2011) (upholding state law that "closely track[ed] [federal law] in all material respects").

survives because real estate transactions "represent only one small part of the broader CFIUS regime." App.50. But CFIUS's coverage of other kinds of transactions does not allow Florida to reject and undo Congress's considered judgments as to real estate. *See Club Madonna*, 42 F.4th at 1255 n.6 (rejecting similar argument).

SB 264 also "sweeps more broadly than the federal regime" in other key respects. *Odebrecht*, 715 F.3d at 1282. Transactions under federal law are assessed individually, with opportunities to mitigate national security concerns through agreements with CFIUS. 50 U.S.C. § 4565(d)(4), (l)(3)(A). SB 264 simply bars a broad range of transactions, "no ifs, ands, or buts." *Odebrecht*, 715 F.3d at 1282. And not only does SB 264 "penaliz[e] economic conduct that the federal law expressly permits," but even where both regimes apply, there is a dramatic mismatch in the penalties imposed. *Id.* at 1281. Federal law imposes criminal liability only for misleading CFIUS through false statements or omissions, 31 C.F.R. § 802.901, while SB 264 imposes severe criminal sanctions on any purchaser who violates its terms. The careful "congressional calibration of force" is replaced with a broad regime of strict liability. *Crosby*, 530 U.S. at 380; *see Ga. Latino All. for Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1267 (11th Cir. 2012) (similar in immigration context).

Finally, the district court pointed to the "history of state regulation of alien landownership," and asserted there was "no similar history" of state sanctions laws. App.50. But in *Crosby*, Massachusetts in fact relied on the long history of state sanctions laws—and the Supreme Court nevertheless held the state law preempted. 530 U.S. at 387-88. Moreover, neither the district court, nor the State, has pointed to a single statute on the books in 2018 remotely like this one. By singling out nationals of a particular country, and entirely barring home purchases for many of them, Florida has trampled on the federal foreign affairs authority and directly contradicted the specific judgments codified in FIRRMA. Whatever impact the CFIUS regime might have on even-handed state regulation of agricultural land, for example, is simply not presented here; Florida's far more extreme statute is preempted.[7]

**D.    SB 264 is unconstitutionally vague.**

SB 264 subjects purchasers in Florida to severe criminal punishment even though individuals cannot reasonably determine who is subject to the law or what

---

[7] The district court noted that the federal government weighed in on the FHA and equal protection claims, but did not "take a position at this time" on preemption or due process. App.50. No inference can fairly be drawn from that. This litigation has proceeded quickly, and the Statement of Interest was filed by a Justice Department section with specific expertise on fair housing. It may take longer for the government to opine on issues of foreign policy implicating multiple agencies. In *Crosby*, for example, the federal government took no position in the lower courts, *see Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 54 n.9 (1st Cir. 1999), but later briefed the foreign policy considerations on which the Supreme Court relied, 530 U.S. at 384 n.22.

properties it covers. Even worse for due process purposes, the law subjects homebuyers to *strict* criminal liability, meaning even an honest mistake could result in prosecution.

The district court entirely ignored the heightened due process standards that apply to statutes imposing strict liability. *Compare* App.38-42, *with Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*, 455 U.S. 489, 498-99 (1982) (threat of criminal penalties reduces "[t]he degree of vagueness that the Constitution tolerates."); *Colautti v. Franklin*, 439 U.S. 379, 395 (1979), *abrogated on other grounds, Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022) ("This Court has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*."). Because SB 264 lacks clear standards and is too vague to put people on fair notice of the conduct it proscribes, it violates due process.

The district court and the State could not even agree on the meaning of "domicile" as it applies to Plaintiffs, *see* App.11-14, yet the district court found its meaning clear enough here to satisfy due process. That was wrong. The district court held that because "domicile" is used in many other areas of the law without raising vagueness problems, its meaning must be sufficiently clear here. App.41. But that ignores two factors that together make this statute different. First, SB 264 imposes strict criminal liability on homebuyers who reach the wrong conclusion about their

domicile, even inadvertently. *Compare, e.g.*, Fla. Stat. § 48.193 (long-arm statute relying on "domicile" for certain types of personal jurisdiction). And second, the meaning of "domicile" is especially unsettled under Florida law as it applies to visa-holders and asylum applicants—two central groups of homebuyers who must now contend with SB 264. *Compare*, *e.g.*, *Juarrero v. McNayr*, 157 So. 2d 79, 80 (Fla. 1963), *with Perez v. Perez*, 164 So. 2d 561, 562 (Fla. 3d DCA 1964). Due process does not tolerate a law that requires individuals to guess about their "domicile" to avoid prison.

The district court's error was compounded by its refusal to recognize how SB 264 fails to put individuals on adequate notice of what properties are covered. In practice, the definitions of "military installation" and "critical infrastructure facility" are impermissibly vague and do not allow individuals to determine whether a given property falls within one of the 5- and 10-mile exclusion zones created by the law. A law must "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). But instead, homebuyers in Florida are left to make a guess based on Google Maps. *See Doe v. Snyder*, 101 F. Supp. 3d 672, 684 (E.D. Mich. 2015) (rejecting argument that Google Maps could cure vagueness in statutory exclusion zones because it does not "clearly mark property lines" or provide "the necessary detail"). For example, the law defines "military installation" as "a base, camp, post, station, yard, or center

23

encompassing at least 10 contiguous acres that is under the jurisdiction of the Department of Defense or its affiliates." Fla. Stat. § 692.201(5). People seeking to buy a home face extraordinary difficulty: identifying every potential military site in the vicinity, determining the acreage of each one, and then identifying the exact boundaries of those sites to assess which properties fall inside or outside the exclusion zone. The problem is even worse when it comes to the range of sites— water treatment facilities, chemical plants, electrical power plants, refineries, seaports, and others—that qualify as critical infrastructure.

The district court suggested that because the law attempts to define "military installation" and "critical infrastructure facility," that was enough to satisfy due process regardless of the practical difficulties homebuyers face. App.40-42. But ordinary people must be on notice of what the law prohibits in the real world, not simply in the abstract—especially where strict liability means they risk prosecution. *See United States v. Petrillo*, 332 U.S. 1, 8 (1947) (statute must convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices").[8]

---

[8] The district court stated that "there is no constitutionally protected activity here" to support a pre-enforcement vagueness challenge, App.39, but the right to acquire and own property is a fundamental constitutional right. *See, e.g.*, *Holden v. Hardy*, 169 U.S. 366, 390-91 (1898); *Yick Wo v. Hopkins*, 118 U.S. 356, 367-68 (1886). The State did not contest this.

## II.    The equities strongly favor Plaintiffs.

Plaintiffs are suffering and will suffer irreparable harm from SB 264.

Plaintiff Xu is scheduled to close on a new home next month, and he will be forced to cancel his contract absent relief. App.123-24; *see also* App.104-05 (Plaintiff Shen's closing scheduled for December 2023). Plaintiffs' chosen properties are unique and irreplaceable, and money damages would be an inadequate remedy at law. *Ebsco Gulf Coast Dev., Inc. v. Salas*, No. 3:15-cv-586-MCR, 2016 WL 11189984, at *4 (N.D. Fla. Sept. 29, 2016); *Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984). Similarly, Plaintiff Multi-Choice Realty is already losing customers and suffering damage to its goodwill. *See* App.161, 220-21; *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005).

SB 264 also imposes discriminatory registration and affidavit requirements. It mandates that Plaintiffs and any other would-be buyer attest under penalty of perjury to their compliance, on pain of third-degree felony charges, up to five years' imprisonment, heavy fines, and property forfeitures. Fla. Stat. § 692.204(8). Given the statute's vagueness, even would-be purchasers who believe themselves permitted to purchase (or incorrectly believe themselves barred) will be deterred and deprived of unique, irreplaceable properties.

25

More broadly, SB 264 is wreaking havoc for Chinese people throughout the state, given its stigmatizing effects and resulting discrimination in the housing market. Under Eleventh Circuit precedent, irreparable injury must be presumed from these harms. *See Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984). Not only do the individual plaintiffs face discrimination when seeking to buy a home, but lenders have stated that they are cutting off business with *all* Chinese citizens in Florida, App.220-21. Only an injunction can prevent these multiple dimensions of irreparable injury from dramatically harming the public interest.

Finally, nothing appreciable weighs on the other side of the scale. Not only is there no public interest "in the enforcement of what is very likely an unconstitutional statute," *Odebrecht*, 715 F.3d at 1290, but the State's position—rejected by the district court as to standing—is that the individual Plaintiffs are not covered by the statute, so an injunction as to Plaintiffs and people like them could not possibly harm the State. The State offered no evidence that real estate purchases by Florida residents like Plaintiffs pose any threat to state security, and the United States has supported an injunction while noting that SB 264 "will not advance the State's purported goal of increasing public safety." App.233. The equities weigh decisively in favor of an injunction pending appeal.

III.    **Appeal of the district court's ruling should be expedited.**

Pursuant to I.O.P. 3 of Eleventh Circuit Rule 27-1, Plaintiffs respectfully request that this Court expedite its review of the district court's denial of their motion for a preliminary injunction. Good cause to expedite exists because of the irreparable harm that Plaintiffs are suffering due to SB 264. In addition to the harms detailed above, Plaintiff Shen is scheduled to close on a home in December 2023, and SB 264 imposes discriminatory registration requirements—forcing plaintiffs who are homeowners to register their property with the State by December 31, 2023. Defendants-Appellees consent to this motion and the proposed schedule below:

- Opening brief: due 14 days after the Court rules on Plaintiffs' motion for an injunction pending appeal

- Response brief: due 30 days later

- Reply brief: due 10 days later

- Oral argument: next available argument calendar

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enjoin the challenged provisions of SB 264 pending appeal.

Dated: August 25, 2023

Keliang (Clay) Zhu
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com

Derek L. Shaffer
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

Bethany Y. Li
Elizabeth Koo
Razeen Zaman
**ASIAN AMERICAN LEGAL**
**DEFENSE AND EDUCATION**
**FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
bli@aaldef.org

Nicholas L.V. Warren
**ACLU FOUNDATION OF FLORIDA**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Respectfully submitted,

*/s/ Ashley Gorski*

Ashley Gorski
Patrick Toomey
Sarah Taitz
Omar Jadwat
Sidra Mahfooz
Noor Zafar
**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Cody Wofsy
**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org

Daniel B. Tilley
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2707
dtilley@aclufl.org

*Attorneys for Plaintiffs–Appellants*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies as follows:

1.      This motion contains 6,246 words, excluding the parts of the document exempted by Rule 32(f), in accordance with Plaintiffs–Appellants' motion for excess words, which requested a word limit of 6,250 words and was filed simultaneously with this motion.

2.      This motion complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6).


Dated: August 25, 2023                    */s/ Ashley Gorski*_____
                                          Ashley Gorski
                                          American Civil Liberties Union
                                             Foundation

                                          *Attorney for Plaintiffs–Appellants*