No. 23-12737

# In the United States Court of Appeals for the Eleventh Circuit

YIFAN SHEN, ET AL.,
*Plaintiffs-Appellants,*

v.

COMMISSIONER, FLORIDA DEPARTMENT OF
AGRICULTURE, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:23-cv-00208-AW-MAF

## APPELLEES' OPPOSITION TO APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

October 30, 2023

DANIEL E. NORDBY
Shutts & Bowen LLP
215 South Monroe Street, Suite 804
Tallahassee, FL 32301
(850) 241-1725
*dnordby@shutts.com*

ASHLEY MOODY
*Attorney General of Florida*

HENRY C. WHITAKER
*Solicitor General*
DANIEL W. BELL
*Chief Deputy Solicitor General*
NATHAN A. FORRESTER
*Senior Deputy Solicitor General*
DAVID M. COSTELLO
*Deputy Solicitor General*
ROBERT S. SCHENCK
*Assistant Solicitor General*

PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Defendants-Appellees*

*Shen v. Commissioner*
*Eleventh Circuit Case No. 23-12737*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Defendants-Appellees certify that, to the best of their knowledge, the following is a complete list of interested persons as required by Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 to 26.1-3:

1.    American Civil Liberties Union Foundation,

2.    American Civil Liberties Union Foundation of Florida,

3.    Anti-Racism Center of LMU Loyola Law School,

4.    Aoki Center for Critical Race and Nation Studies at UC Davis School of Law,

5.    Arkansas, State of,

6.    Asian Americans Advancing Justice – Asian Law Caucus

7.    Asian Americans Advancing Justice – Atlanta,

8.    Asian American Legal Defense & Education Fund,

9.    Asian American Women's Political Initiative,

10.    Asian Law Alliance,

11.    Asian Pacific American Bar Association of Tampa Bay,

12.    Bailey, Andrew,

13.    Bell, Daniel W.,

14.    Boston University Center for Antiracist Research,

15.    Butler, Steve,

16.    Carr, Christopher M.,

17.    Center for Civil Rights and Racial Justice at the University of Pittsburgh School of Law,

18.    Center for Immigration Law, Policy and Justice at Rutgers Law School,

19.    Center on Race, Inequality, and the Law at New York University School of Law,

20.    Chang, Robert Seungchul,

21.    Chin, Gabriel J.,

22.    Chinese for Affirmative Action,

23.    Clarke, Kristen,

24.    Conference of Asian Pacific American Law Faculty,

25.    Coody, Jason R.,

26.    Costello, David M.,

27.    Cuison-Villazor, Rose,

28.    DeHeng Law Group, PC,

29.    Fitch, Lynn,

30.    Fitzgerald, Patricia,

31.    Fitzpatrick, Martin A.,

*Shen v. Commissioner*
*Eleventh Circuit Case No. 23-12737*

32.    Florida Office of the Attorney General,

33.    Formella, John M.,

34.    Forrester, Nathan A.,

35.    Fred T. Korematsu Center for Law and Equality at Seattle University
       School of Law,

36.    Georgia, State of,

37.    Gorski, Ashley Marie,

38.    Griffin, Tim,

39.    Handberg, Roger B.,

40.    Harwell, Jr., Lacy R.,

41.    Hispanic National Bar Association,

42.    Idaho, State of,

43.    Indiana, State of,

44.    Jackley, Marty J.,

45.    Jacobs, Arthur, I.,

46.    Jadwat, Omar,

47.    Japanese American Citizens League,

48.    Jarwala, Alisha,

49.    Kelly, J. Alex,

*Shen v. Commissioner*
*Eleventh Circuit Case No. 23-12737*

50.  Knudsen, Austin,

51.  Koo, Elizabeth L.,

52.  Labrador, Raúl R.,

53.  LaPointe, Markenzy,

54.  Larizza, R.J.,

55.  Latino Justice PRLDEF,

56.  Lee, Dexter,

57.  Li, Bethany Yue-Ping,

58.  Liu, Yongxin,

59.  Longfield, Timothy J.,

60.  Maurer, Michael S.,

61.  Mahfooz, Sidra,

62.  Mississippi, State of,

63.  Missouri, State of,

64.  Montana, State of,

65.  Moody, Ashley,

66.  Multi-Choice Realty, LLC,

67.  National Asian Pacific American Bar Association,

68.  New Hampshire, State of,

*Shen v. Commissioner*
*Eleventh Circuit Case No. 23-12737*

69.     Nordby, Daniel E.,

70.     North Dakota, State of,

71.     Pagnucco, Carrie,

72.     Quinn Emanuel Urquhart & Sullivan, LLP,

73.     Rather, Shaiba,

74.     Reyes, Sean,

75.     Rodriguez, Madeleine Kristine,

76.     Rokita, Theodore E.,

77.     Rundle, Katherine Fernandez,

78.     Sayler, Erik Louis,

79.     Schenck, Robert S.,

80.     Shaffer, Derek Lawrence,

81.     Shen, Yifan,

82.     Shutts & Bowen, LLP,

83.     Simpson, Wilton,

84.     Song, Jian,

85.     South Asian Bar Association of North America,

86.     South Carolina, State of,

87.     South Dakota, State of,

88. Taitz, Sarah Michelle,

89. Tang, Haiyan,

90. Tilley, Daniel Boaz,

91. Toomey, Patrick Christopher,

92. Turner, Joshua Nathaniel,

93. U.S. Department of Justice,

94. Utah, State of,

95. Wang, Xinxi,

96. Warren, Nicholas,

97. Whitaker, Henry C.,

98. Wilson, Alan,

99. Winsor, Honorable Allen C.,

100. Wofsy, Cody H.,

101. Wold, Theodore, J.,

102. Worrell, Monique,

103. Wrigley, Drew H.,

104. Xu, Zhiming,

105. Zafar, Noor,

106. Zaman, Razeen J.,

107.   Zhu, Keliang

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................ 2

    A.    SB 264 .......................................................................................... 2

    B.    Plaintiffs ...................................................................................... 3

    C.    Procedural History ...................................................................... 4

ARGUMENT .................................................................................................. 4

I.    The Court should not enjoin SB 264 pending appeal. .......................... 5

    A.    SB 264 does not violate the Equal Protection Clause. ............... 5

            1.    SB 264 does not trigger heightened scrutiny under
                 the Equal Protection Clause. ............................................. 5

            2.    SB 264 was not motivated by racial or national-
                 origin-based animus. ......................................................... 9

    B.    SB 264 is not vague. ................................................................. 13

    C.    SB 264 is not preempted by the FHA. ..................................... 14

    D.    SB 264 is not preempted by the CFIUS regime. ..................... 15

II.    The remaining equitable factors also do not support an injunction .................. 20

III.    Any injunction should be carefully tailored. .......................................... 22

IV.    Florida does not oppose expedition. ..................................................... 23

CONCLUSION .............................................................................................. 23

CERTIFICATE OF COMPLIANCE .................................................................. 24

CERTIFICATE OF SERVICE ......................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Accardo v. Brown*,
  139 So. 3d 848 (Fla. 2014) ........................................................... 21

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ........................................................ 9

*Alabama v. U.S. Army Corps of Eng'rs*,
  424 F.3d 1117 (11th Cir. 2005) ..................................................... 20

*Armstrong v. Exceptional Child Ctr.*,
  575 U.S. 320 (2015) .............................................................. 14, 16

*Bray v. Alexandria Women's Health Clinic*,
  506 U.S. 263 (1993) ................................................................. 11

*Cabell v. Chavez-Salido*,
  454 U.S. 432 (1982) .................................................................. 9

*Chamber of Com. of the U.S. v. Whiting*,
  563 U.S. 582 (2011) ................................................................. 17

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005) ................................................................. 14

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ........................................................ 18, 19, 20

*Dean v. Warren*,
  12 F.4th 1248 (11th Cir. 2021) ...................................................... 12

*Dobbs v. Jackson Women's Health Org.*,
  142 S. Ct. 2228 (2022) ............................................................... 9

*Espinoza v. Farah Mfg. Co.*,
  414 U.S. 86 (1973) ................................................................... 15

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) ....................................................... 8

*Fac. Senate of Fla. Int'l Univ. v. Winn*,
    616 F.3d 1206 (11th Cir. 2010) ........................................................................ 19

*Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n*,
    67 So. 3d 187 (Fla. 2011) ................................................................................. 21

*Florida v. Dep't of Health & Human Servs.*,
    19 F.4th 1271 (11th Cir. 2021) .......................................................................... 4

*Foley v. Connelie*,
    435 U.S. 291 (1978) ........................................................................................... 7

*Frick v. Webb*,
    263 U.S. 326 (1923) ........................................................................................... 6

*Georgia v. President of the U.S.*,
    46 F.4th 1283 (11th Cir. 2022) ........................................................................ 22

*Graham v. Richardson*,
    403 U.S. 365 ....................................................................................................... 6

*Greater Birmingham Ministries v. Sec'y of State of Ala.*,
    992 F.3d 1299 (11th Cir. 2021) ................................................................. 12, 13

*Guinn v. United States*,
    238 U.S. 347 (1915) ......................................................................................... 11

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023) ......................................................................................... 15

*In re Wild*,
    994 F.3d 1244 (11th Cir. 2021) ................................................................. 14, 15

*League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*,
    32 F.4th 1363 (11th Cir. 2022) ..................................................................... 4, 5

*LeClerc v. Webb*,
    419 F.3d 405 (5th Cir. 2005) ........................................................................ 7, 8

*LULAC v. Bredesen*,
    500 F.3d 523 (6th Cir. 2007) ........................................................................ 7, 8

*Mallory v. Norfolk S. Ry. Co.*,
  600 U.S. 122 (2023) ............................................................................. 6

*Maryland v. King*,
  567 U.S. 1301 (2012) ......................................................................... 22

*Nat'l Foreign Trade Council v. Natsios*,
  181 F.3d 38 (1st Cir. 1999) ............................................................... 20

*Nelson v. Great Lakes Educ. Loan Servs., Inc.*,
  928 F.3d 639 (7th Cir. 2019) ............................................................ 17

*Nevett v. Sides*,
  571 F.2d 209 (5th Cir. 1978) ............................................................ 11

*Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ........................................................ 19

*Oyama v. California*,
  332 U.S. 633 (1948) ............................................................................. 6

*Plyler v. Doe*,
  457 U.S. 202 (1982) ............................................................................. 7

*Porterfield v. Webb*,
  263 U.S. 225 (1923) ............................................................................. 6

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmties. Project*,
  576 U.S. 519 (2015) ........................................................................... 15

*Resendiz v. Exxon Mobil Corp.*,
  72 F.4th 623 (4th Cir. 2023) ............................................................ 11

*Respect Maine PAC v. McKee*,
  562 U.S. 996 (2010) ............................................................................. 5

*Rice v. Cayetano*,
  528 U.S. 495 (2000) ..................................................................... 10, 11

*Sackett v. EPA*,
  598 U.S. 651 (2023) ........................................................................... 16

*SEC v. Big Apple Consulting USA, Inc.*,
    783 F.3d 786 (11th Cir. 2015) ........................................................................ 15

*Shaw v. Reno*,
    509 U.S. 630 (1993) ................................................................................. 9, 11

*SisterSong Women of Color Reprod. Just. Collective v. Gov. of Ga.*,
    40 F.4th 1320 (11th Cir. 2022) .................................................................... 13

*State v. Burch*,
    545 So. 2d 279 (Fla. 4th DCA 1989) ........................................................... 13

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) .................................................................... 22

*Takahashi v. Fish & Game Comm'n*,
    334 U.S. 410 (1948) ...................................................................................... 6

*Terrace v. Thompson*,
    263 U.S. 197 (1923) ................................................................................... 6, 8

*Touchston v. McDermott*,
    234 F.3d 1130 (11th Cir. 2000) ..................................................................... 4

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012) .................................................................... 16

*United States v. Osorto*,
    995 F.3d 801 (11th Cir. 2021) .................................................................. 9, 10

*Vill. of Arlington Heights v. Metro. Hous. Dev., Co.*,
    429 U.S. 252 (1977) .................................................................................... 10

*Webb v. O'Brien*,
    263 U.S. 313 (1923) ...................................................................................... 6

*Weber v. Weber*,
    929 So. 2d 1165 (Fla. 2d DCA 2006) .......................................................... 14

*Dandamudi v. Tisch*,
    686 F.3d 66 (2d Cir. 2012) ............................................................................ 7

*Wyeth v. Levine*,
  555 U.S. 555 (2009)..................................................................................16, 18

**Statutes and Constitutional Provisions**

42 U.S.C. § 1983 .........................................................................................14, 15

42 U.S.C. § 3613 ............................................................................................ 14

42 U.S.C. § 3614 ............................................................................................ 22

42 U.S.C. § 3615 ............................................................................................ 14

48 U.S.C. § 1508 ............................................................................................ 17

48 U.S.C. §§ 1501–1507 ...............................................................................8, 17

50 U.S.C. § 4552 ............................................................................................ 16

50 U.S.C. § 4556 ............................................................................................ 16

50 U.S.C. § 4565 ..........................................................................................16, 18

Ark. Const. of 1868, art. I, § 20 ...................................................................... 8

Fla. Const. of 1868, art. I, § 17 ....................................................................... 8

Fla. Stat. § 692.201...................................................................................2, 5, 13

Fla. Stat. § 692.203..........................................................................................2, 3

Fla. Stat. § 692.204.................................................................................2, 3, 13, 21

Neb. Const. of 1866–1867, art. I, § 14........................................................... 8

Nev. Const. of 1864, art. I, § 16 ..................................................................... 8

**Regulations**

Fla. Admin. Register 73C-60.002.................................................................... 21

28 C.F.R. § 0.20(c) .......................................................................................... 20

**Other Authorities**

1 A.F. Denny, *The General Statutes of the State of Missouri* (1866) ........................................ 8

1 Seymour D. Thompson & Thomas M. Steger, *A Compilation of the Statute Laws of the State of Tennessee* (3d ed. 1873) ........................................ 8

Act of Mar. 3, 1887, ch. 340, 24 Stat. 476–77 (1887) ........................................ 8

Allison Brownell Tirres, *Property Outliers: Non-Citizens, Property Rights and State Power*, 27 Geo. Immigr. L.J. 77 (2012) ........................................ 9

*Brief for the United States as Amicus Curiae, Wallace v. Calogero*, Nos. 05-1645, 06-11 (U.S. 2007), 2007 WL 1520968 ........................................ 8

Charles H. Sullivan, *Alien Land Laws: A Re-Evaluation*, 36 Temp. L.Q. 15 (1962) ........................................ 8

David M. Golove, *Treaty-Making and the Nation: The Historical Foundations of the Nationalist Conception of the Treaty Power*, 98 Mich. L. Rev. 1075 (2000) ........................................ 17

James Frechter, *Alien Landownership in the United States: A Matter of State Control*, 14 Brook. J. Int'l L. 147 (1988) ........................................ 17

Pub. L. No. 64-301, 39 Stat. 874 (Feb. 3, 1917) ........................................ 6

Treaty Concerning the Encouragement and Reciprocal Protection of Investment, Alb.-U.S., Jan. 11, 1995, T.I.A.S. No. 98-104 ........................................ 17

Treaty Concerning the Encouragement and Reciprocal Protection of Investment, Mozam.-U.S., Dec. 1, 1998, T.I.A.S. No. 13006 ........................................ 17

Treaty of Amity and Commerce, Fr.-U.S., Feb. 6, 1778, 8 Stat. 12 ........................................ 17

William Blackstone, *Commentaries on the Laws of England* ........................................ 9

## INTRODUCTION

At issue in this appeal is a Florida law that protects Floridians and the State itself by restricting the totalitarian governments of certain "foreign countries of concern"—China, Russia, Iran, North Korea, Cuba, Venezuela, and Syria—from purchasing land in Florida. *See* Fla. Laws ch. 2023-33 (May 8, 2023) (SB 264). To prevent circumvention, that legislation also limits land purchases by people domiciled in those nations, excluding U.S. citizens and lawful permanent residents (LPRs).

Plaintiffs challenge SB 264 as unconstitutionally vague, motivated by racist intent, and preempted by federal law. The district court denied Plaintiffs a preliminary injunction, finding their claims unlikely to succeed on the merits. Plaintiffs now seek the extraordinary relief of an injunction pending appeal.

This Court should not give them anything of the sort. As the district court correctly concluded, SB 264 is well within the State's traditional sovereign authority to regulate the acquisition of its own land, and the State has done so in clear terms not based on race or national origin. SB 264 mitigates the influence of pernicious foreign governments. It does not discriminate based on race or national origin. And nothing the federal government has done—including through the limited regulatory authority and scarce resources afforded to the Committee on Foreign Investment in the United States (CFIUS)—precludes Florida from exercising core state sovereign authority over its own land. Plaintiffs' arguments to the contrary would disable Florida from taking

1

action to prevent threats the federal government has shown no interest in addressing and instead has left to the states.

Plaintiffs have also failed to show that irreparable harm will befall them absent an injunction pending appeal or that the balance of the equities favors them. Plaintiffs in their motion (at 2), filed August 26, 2023, suggested that they urgently needed relief because one of them had a real-estate contract "scheduled to close . . . *next month* and, absent relief, will be forced to cancel his contract for a unique, irreplaceable property." It is now October, and Plaintiffs reveal in their opening brief that no one was "forced" to do that. *See* Initial Br. 6–7. That makes sense because, as we have explained, Plaintiffs' real-estate contracts predate SB 264's effective date and are thus protected by the statute's grandfather clause. *See* Fla. Stat. §§ 692.203(2), 692.204(3). *See* Appellee's Resp. to Appellant's Mot. for Leave to Exceed Word Limit 2–3, ECF No. 17; *infra* 20–21.

This Court should deny the injunction.

## BACKGROUND

### A.    SB 264

SB 264 prohibits certain land acquisitions by "foreign principals" of "foreign countries of concern." Those countries are China, Russia, Iran, North Korea, Cuba, Venezuela, and Syria. Fla. Stat. § 692.201(3). A "foreign principal" includes the government itself, a government official, a member of a political party in that country, and—as relevant here—"[a]ny person who is domiciled in" one of those countries "and is not a citizen or lawful permanent resident of the United States." Fla. Stat. § 692.201(4).

Effective July 1, 2023, "foreign principals" are prohibited from acquiring land within 10 miles of a "military installation" or "critical infrastructure facility" or, in the case of China, anywhere in the State. Fla. Stat. §§ 692.203(1), 692.204(1). Individuals with a non-tourist visa or asylum may acquire up to two contiguous acres of residential property not within five miles of a military installation. Fla. Stat. §§ 692.203(4), 692.204(2). But all individuals may continue to own interests in property acquired prior to July 1. Fla. Stat. §§ 692.203(2), 692.204(3). Foreign principals who owned land subject to SB 264 before July 1, 2023, must file a one-time registration statement by the end of 2023 with Florida's Department of Commerce. Fla. Stat. § 692.203(3). So if a foreign principal owns property within 10 miles of a military installation or critical infrastructure facility, or any land in the case of foreign principal of China, the principal will need to register that property. Foreign principals purchasing land subject to SB 264 on or after July 1—such as through the two-acre residential property exception—also must register that property within 30 days of acquisition. Fla. Stat. § 692.203(3)(b).

## B.    Plaintiffs

Plaintiffs are four individuals and one LLC. The individual Plaintiffs are three Chinese citizens with nonimmigrant U.S. visas and one Chinese-citizen asylum applicant. They allege that SB 264 will either require them to register land they already own or prohibit them from purchasing land in the future. The LLC Plaintiff (Multi-Choice Realty) is a real-estate-brokerage firm that has "Chinese-speaking" clients. Mot. App. 159, 161.

3

## C.    Procedural History

On May 22, 2023, Plaintiffs sued to enjoin enforcement of SB 264. Mot. App. 236. The individual Plaintiffs asserted equal-protection, vagueness, and preemption claims under the Fair Housing Act (FHA) and the federal statute that authorizes CFIUS to regulate foreign investment in the United States. Multi-Choice joined only the preemption claims. All Plaintiffs moved for a preliminary injunction. Mot. App. 3.

After a hearing, *id.*, the district court denied the preliminary injunction, Mot. App. 51. Although the court found at least one individual Plaintiff had standing, it ruled that no Plaintiff was likely to succeed on the merits. Mot. App. 15, 52. The court did not address Florida's argument that Plaintiffs have no cause of action to assert preemption claims under the FHA and the CFIUS statute.

## ARGUMENT

To obtain the "extraordinary remedy" of an injunction pending appeal, Plaintiffs must show (1) a substantial likelihood of success on the merits; (2) a substantial risk of irreparable injury absent injunctive relief; (3) an injunction would not cause substantial harm to other interested persons; and (4) the public interest favors an injunction. *Florida v. Dep't of Health & Human Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021) (citing *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (en banc)).

Because they know their case on the merits is weak, Plaintiffs seek to water down that standard, arguing that they need show only a "substantial case on the merits," rather than a substantial likelihood of success. Mot. 5–6 (citing *League of Women Voters of Fla.,*

4

*Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022)). Even if that were true when a party seeks a stay pending appeal—as was the case in *League of Women Voters*—an injunction pending appeal "demands a significantly higher justification than a request for a stay." *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (citation omitted). "[U]nlike a stay, an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Id.* Plaintiffs have not provided this "significantly higher justification," or even met their diluted standard.

## I.    THE COURT SHOULD NOT ENJOIN SB 264 PENDING APPEAL.

### A.    SB 264 does not violate the Equal Protection Clause.

The district court correctly held that SB 264's land-purchase restrictions do not violate the Equal Protection Clause. That law regulates by domicile and immigration status, not race or national origin, and easily survives rational-basis review.

#### 1.    SB 264 does not trigger heightened scrutiny under the Equal Protection Clause.

Principally, SB 264 limits hostile foreign governments and their agents from purchasing land. Fla. Stat. §§ 692.201(4), 692.203(1). To effectuate that prohibition, the law also limits those domiciled in—and likely subject to the influence of—those countries from purchasing land as well. Fla. Stat. § 692.201(4)(d). It exempts U.S. citizens and LPRs, no matter where domiciled, from its proscriptions.

5

The U.S. Supreme Court has long upheld restrictions on the purchase of land by aliens, *see, e.g.*, *Terrace v. Thompson*, 263 U.S. 197, 219–22 (1923); *Porterfield v. Webb*, 263 U.S. 225, 232–33 (1923); *Webb v. O'Brien*, 263 U.S. 313, 324–26 (1923); *Frick v. Webb*, 263 U.S. 326, 332–34 (1923), ruling that they do not violate "equal protection so long [as they are] not 'arbitrary or unreasonable.'" Mot. App. 22. (quoting *Porterfield*, 263 U.S. at 232–33). Plaintiffs suggest (at 13) that these precedents have been eroded or discredited, but the cases they cite expressly assume the continued validity of them. *See Graham v. Richardson*, 403 U.S. 365, 373–74 & nn.8–9 (1971); *Oyama v. California*, 332 U.S. 633, 646–47 (1948); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 422 (1948). When a Supreme Court case "has direct application," lower courts must apply that precedent, despite alleged "tension with some other line of decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).

Plaintiffs also claim (at 14) that these cases are distinguishable because the land restrictions at issue applied to all aliens, not just citizens or domiciliaries of certain countries. That is not so. The Washington law in *Terrace* barred aliens from holding property if they were ineligible for citizenship under federal law or, if eligible, they had failed to declare a good-faith intent to seek citizenship. 263 U.S. at 219–22. At that time, eligibility for citizenship turned in part on an alien's country of origin. *See id.* at 220; *see also* Pub. L. No. 64-301, § 3, 39 Stat. 874, 876 (Feb. 3, 1917) (barring individuals from certain countries, including China, from admission into the United States). The district court was correct that the statute in *Terrace* is indistinguishable from SB 264, even if it

is different "in a literal sense" because that law focused on "eligibility for citizenship" and a declaration to seek citizenship rather than "domicile." Mot. App. 22–24.

Even apart from that binding precedent, Florida's law does not trigger heightened scrutiny because it exempts LPRs, an alternative holding of the district court that Plaintiffs' motion—even as augmented by a word expansion—does not address. Mot. App. 29–30. The Supreme Court has recognized that not "all limitations on aliens are suspect." *Foley v. Connelie*, 435 U.S. 291, 294 (1978). Illegal aliens, for instance, "cannot be treated as a suspect class." *Plyler v. Doe*, 457 U.S. 202, 223 (1982). On the other end of the spectrum are LPRs, discrimination against whom "the Supreme Court has reviewed with strict scrutiny," *LeClerc v. Webb*, 419 F.3d 405, 415 (5th Cir. 2005), because such discrimination strikes "at the noncitizens' ability to exist in the community, a position seemingly inconsistent with the congressional determination to admit the alien to permanent residence." *Foley*, 435 U.S. at 295. That leaves a middle ground of temporary aliens, to whom the Fifth and Sixth Circuits have refused to extend heightened scrutiny. *LeClerc*, 419 F.3d at 415; *LULAC v. Bredesen*, 500 F.3d 523, 533 (6th Cir. 2007).[1] As the United States then argued in opposition to certiorari in *LeClerc*, the Supreme Court's holding "that alienage classifications are subject to strict scrutiny cannot be divorced

---

[1] While the Second Circuit rejected this reasoning in *Dandamudi v. Tisch*, that case involved a New York law that precluded all nonimmigrants from obtaining a pharmacist's license, even if they were domiciled in the United States. *See* 686 F.3d 66, 77 (2d Cir. 2012). SB 264 does not sweep so broadly, and exempts nonimmigrants domiciled anywhere else in the world other than foreign countries of concern.

from the context in which it appeared," because nonimmigrant aliens "are present only temporarily and subject to restrictions, and they do not ordinarily have the same ties to this country as permanent residents." *Brief for the United States as Amicus Curiae* at 16–17, *Wallace v. Calogero*, Nos. 05-1645, 06-11 (U.S. May 23, 2007), 2007 WL 1520968, at *15–17. This Court approvingly cited *LeClerc* in "declin[ing] to extend the Supreme Court's decisions concerning resident aliens to different alien categories," namely DACA recipients. *Estrada v. Becker*, 917 F.3d 1298, 1310 (11th Cir. 2019). And SB 264 is even more modest than the classifications upheld in *LeClerc* and *LULAC*, exempting both LPRs and nonimmigrant aliens domiciled in America.

History and the modern "political function" doctrine also support the district court's conclusion. At the time of the ratification of the Fourteenth Amendment, state restrictions on alien land ownership were ubiquitous. *See Terrace*, 263 U.S. at 217–18; Charles H. Sullivan, *Alien Land Laws: A Re-Evaluation*, 36 Temp. L.Q. 15, 18–31, 31 n.68 (1962); *see also, e.g.*, Nev. Const. of 1864, art. I, § 16; 1 A.F. Denny, *The General Statutes of the State of Missouri* 448 (1866); Neb. Const. of 1866–1867, art. I, § 14; 1 Seymour D. Thompson & Thomas M. Steger, *A Compilation of the Statute Laws of the State of Tennessee* 932 (3d ed. 1873); Fla. Const. of 1868, art. I, § 17; Ark. Const. of 1868, art. I, § 20. Shortly after Reconstruction, the federal government itself adopted similar restrictions. *See* Act of Mar. 3, 1887, ch. 340, 24 Stat. 476–77 (1887); *see also* 48 U.S.C. §§ 1501–1507. Those who adopted the Fourteenth Amendment would not have failed to appreciate the "wide discretion" that state legislatures traditionally wielded to restrict alien land

ownership, Mot. App. 21, which derived from a nearly millennium-old common law tradition, Allison Brownell Tirres, *Property Outliers: Non-Citizens, Property Rights and State Power*, 27 Geo. Immigr. L.J. 77, 92 (2012); William Blackstone, *Commentaries on the Laws of England* \*367–72. And "the State's broad power to define its political community" justifies alien land restrictions. *Cabell v. Chavez-Salido*, 454 U.S. 432, 439–40 (1982). The Equal Protection Clause does not "obliterate all the distinctions between citizens and aliens," because that would "depreciate the historic value of citizenship," which has long been tied to the ability to hold land. *Id.* at 439.

### 2.    SB 264 was not motivated by racial or national-origin-based animus.

SB 264's classifications, on their face, are not based on race or national origin. *See Shaw v. Reno*, 509 U.S. 630, 642 (1993) (a facial classification exists when "the [protected] classification appears on the face of [a] statute"). Rather, the law classifies by domicile and immigration status. *See United States v. Osorto*, 995 F.3d 801, 822 (11th Cir. 2021) ("national origin" refers to the country of one's birth or their ancestor's country of birth). Just as a bathroom policy based on biological sex "does not facially discriminate on the basis of transgender status," Florida's "policy divides [people] into two groups, both of which include [Chinese people]," such that there is "a 'lack of identity' between the policy and [race or national origin]." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808–09 (11th Cir. 2022) (en banc); *see also Dobbs v. Jackson*

*Women's Health Org.*, 142 S. Ct. 2228, 2245–46 (2022) (laws restricting abortion apply only to women, yet are not a sex classification).

Plaintiffs attempt to skirt this "textual reality," Mot. App. 19, by claiming that domicile is a "proxy" for race or national origin, Mot. 7–8. But as the district court observed, "residency and birthplace do not clearly overlap to the point where they are practically indistinguishable." Mot. App. 19.[2] The two concepts indeed substantially overlap, but that establishes at most disparate impact, which is not enough to prove an equal-protection claim. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Co.*, 429 U.S. 252, 265–66 (1977). Equal-protection plaintiffs must also establish animus, which Plaintiffs have failed to do. *Id.* They must do so either by demonstrating a facial classification— which they cannot do because "alienage . . . differs from national origin," *Osorto*, 995 F.3d at 822—or through the multi-factor evidentiary analysis laid out in *Arlington Heights.*

Plaintiffs are wrong that the Court can presume that domicile is a "proxy" for national-origin or racial animus. They point to *Rice v. Cayetano*, 528 U.S. 495, 514, 515–

---

[2] Plaintiffs request, for the first time on appeal, judicial notice of a U.N. webpage purportedly showing that 99.9% of China's population is of Chinese national origin. Mot. 6–7 & n.2. This evidence should have been submitted to the district court so that the parties could contest, and the factfinder could evaluate, the methodology used to arrive at the figures on that page. In any event, the webpage is at best ambiguous and incomplete. Among other things, it does not explain how to read the "international migrant stock" numbers or how it was compiled, and it expressly excludes data from Hong Kong and Macau. But even if these facts were true, Plaintiffs claims still fail for the reasons set out below.

17 (2000), and *Guinn v. United States*, 238 U.S. 347, 364–65 (1915). But the law in *Rice* on its face restricted voting to "descendant[s] of not less than one-half part of the races inhabiting the Hawaiian Islands previous to 1778." 528 U.S. at 510. That law thus "single[d] out identifiable classes of persons . . . solely because of their ancestry or ethnic characteristics." *Id.* at 515 (citation omitted). *Guinn* likewise involved a voter-literacy requirement with an exception for individuals with a particular bloodline—the "descendant[s]" of those who could vote prior to the enactment of the Fifteenth Amendment. 238 U.S. at 364. In both cases, the challenged law not only classified people based on bloodline, but the "necessary motivation [of the Legislature] was painfully apparent" on the face of the law. *Nevett v. Sides*, 571 F.2d 209, 220 (5th Cir. 1978). Put differently, the restrictions "could not be explained on grounds *other* than race." *Shaw*, 509 U.S. at 644 (emphasis added) (describing *Guinn*); *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993); *Resendiz v. Exxon Mobil Corp.*, 72 F.4th 623, 628 & n.6 (4th Cir. 2023) (noting that, even under a "proxy" theory, irrationality is required because "[d]isparate impact alone is not enough to prove intent"). Here, nothing like that is true. Foreign domicile is a rational way to identify individuals more likely subject to foreign government influence, just as requiring permanent work authorization is a rational way to choose employees. *See Resendiz*, 72 F.4th at 628–29.[3] Animus cannot be presumed

---

[3] For the same reason, Plaintiffs fail in their argument—presented for the first time on appeal—that "[t]he State has provided no justification for" its law and that SB 264 thus lacks even a rational basis. Mot. 14. Under rational-basis review, it is Plaintiffs'

when plainly non-discriminatory reasons exist for relying on a particular criterion. *See Dean v. Warren*, 12 F.4th 1248, 1260–61 (11th Cir. 2021).

Turning to the *Arlington Heights* analysis, Plaintiffs (at 9–11, 14–15) have identified no evidence whatsoever of animus toward individuals of Chinese national origin, let alone evidence sufficient to overcome "the presumption of legislative good faith" that attends any inquiry into legislative intent. *Greater Birmingham Ministries v. Sec'y of State of Ala.*, 992 F.3d 1299, 1325 (11th Cir. 2021). The statements of legislators that Plaintiffs cite (at 9–11) are evidence to the contrary. The concern was about threats posed by hostile foreign nations, not individuals born there. Mot. App. 32–33. Florida officials wanted to prevent those nations from causing "upheaval" and "turmoil" in Florida. Mot. App. 33. At most, Plaintiffs' cherry-picked statements show an awareness of a possible disparate impact, but "[d]iscriminatory purpose requires more than" such awareness. Mot. App. 32–33. And Plaintiffs identify no irregularities in SB 264's passage.

Plaintiffs' suggestion (at 10) that the Florida Legislature should have chosen "narrower alternatives"—such as limiting SB 264 to "foreign powers and their agents"—would have defeated the entire purpose of having the "domicile" provision

---

burden to "negate every conceivable basis that might justify the law." Mot. App. 35. The State below demonstrated many justifications for SB 264—public safety, national and state security, avoiding landlord absenteeism, negating totalitarian foreign influence in America, preserving scarce resources for voters (i.e., citizens) and LPRs, and encouraging individuals to become domiciled in the United States. *Id.*; *see also* DE60 at 26. SB 264 thus easily withstands rational-basis review.

to prevent circumvention of the law by totalitarian governments. *See Greater Birmingham Ministries*, 992 F.3d at 1327. Plaintiffs also overlook that the Legislature adopted mitigating measures: It allowed Chinese domiciliaries to purchase certain residential property, and it excluded U.S. citizens and LPRs from the restrictions, which undoubtedly include persons of Chinese national origin. *See* Fla. Stat. § 692.204(1)(a)(4), (2); *Greater Birmingham Ministries*, 992 F.3d at 1327 (deeming it immaterial that the "legislature did not include the alternative option that Plaintiffs would have preferred," when it adopted measures that softened the law's impact).

The district court did not clearly err in finding that Plaintiffs failed to show animus. Mot. App. 32.

## B.    SB 264 is not vague.

Plaintiffs argue (at 21–24) that three terms in SB 264 are vague: "domicile"; "critical infrastructure facility"; and "military installation." They also object to the method for determining the distance between a residential property and a critical infrastructure facility or military installation. Mot. 23–24. But as the district court correctly found, Mot. App. 39–42, those terms are not even close to being so "utterly devoid of a standard of conduct so that [they] simply ha[ve] no core," *SisterSong Women of Color Reproductive Justice Collective v. Governor of Georgia*, 40 F.4th 1320, 1327 (11th Cir. 2022). The statute defines "critical infrastructure facility" and "military installation" in considerable detail. Fla. Stat. § 692.201(2), (5). Florida law tells individuals how to calculate statutory distances. *State v. Burch*, 545 So. 2d 279, 281 (Fla. 4th DCA 1989). And "domicile" has a

well-established meaning under Florida common law. *Weber v. Weber*, 929 So. 2d 1165, 1168 (Fla. 2d DCA 2006). Nothing about any of that is vague.

### C.    SB 264 is not preempted by the FHA.

Plaintiffs claim that SB 264 is preempted by the FHA. But "the Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 324–25 (2015) (citation omitted). Plaintiffs' preemption claim must therefore rest on either a statutory cause of action or an action rooted in equity. Neither is available under the FHA.

The FHA gives an "aggrieved person" the right to sue only for "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). The express provision of this one cause of action forecloses any implied right of action for preemption under the FHA, under 42 U.S.C. § 1983, or in equity. *See Armstrong*, 575 U.S. at 328; *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005); *In re Wild*, 994 F.3d 1244, 1255 (11th Cir. 2021) (en banc). Plaintiffs thus attempt to shoehorn their preemption claim into Section 3613(a)(1)(A) by characterizing SB 264 itself as a "discriminatory housing practice." But the FHA carefully distinguishes between a "law" that may be preempted and a "discriminatory housing practice" that is "require[d] or permit[ted]" by that law. 42 U.S.C. § 3615. The former cannot be the latter.

Even if Plaintiffs had a right to sue for preemption under the FHA, their claim would fail on the merits. As the district court explained, the anti-discrimination provision in the FHA "does not include alienage or citizenship as protected characteristics."

14

Mot. App. 37. That refutes Plaintiffs' insistence (at 6–9) that alienage or domicile discrimination is somehow the same as national-origin or race discrimination under the FHA. *See Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 95 (1973) (holding that Title VII proscribes discrimination based on race and national origin, but not based on citizenship or alienage); *supra* 9–12. Plaintiffs have failed to demonstrate facial or intentional discrimination based on race or national origin under the FHA for essentially the same reasons they failed to establish a likelihood of success on their equal-protection claim. Finally, the district court did not abuse its discretion in refusing to consider the FHA disparate-impact claim Plaintiffs half-heartedly raised in a footnote. *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 811–12 (11th Cir. 2015). And in all events, Plaintiffs fail to show a "statistical disparity" in the law's effects or "robust causality" between the law and that disparity. *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Cmties. Project*, 576 U.S. 519, 542–43 (2015). Nor is there "an available alternative practice that has less disparate impact and serves the [State's] legitimate needs" in protecting against malign foreign government influence. Mot. App. 38.

### D.     SB 264 is not preempted by the CFIUS regime.

Plaintiffs are just as wrong to claim that Florida's statute is preempted by the regulatory regime administered by the Committee on Foreign Investment in the United States (CFIUS). That regime lacks the "rights-creating" language necessary to imply a cause of action for preemption, whether from the statute itself or under 42 U.S.C. § 1983. *See Wild*, 994 F.3d at 1255 n.11; *Health & Hosp. Corp. of Marion Cnty. v. Talevski*,

599 U.S. 166, 183–84 (2023). It also precludes any equitable claim for preemption by (1) precluding judicial review of the actions of the President, 50 U.S.C. § 4565(e)(1); (2) providing the U.S. Attorney General a cause of action to enforce a presidential order, *id.* § 4565(d)(3); and (3) authorizing the President to sue "any person" (including a state) that takes "acts or practices which constitute or will constitute a violation of any provision of this chapter," *id.* §§ 4556(a), 4552(15). *See Armstrong*, 575 U.S. at 328 (when statute "implicitly precludes private enforcement," litigants "cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement"). Congress sensibly entrusted enforcement of the CFIUS regime to the President and his subordinates, the actors best positioned to protect the national-security values the CFIUS statute embodies, not to self-interested private plaintiffs.

Plaintiffs' CFIUS-preemption claim also fails on the merits. Because regulation of real-estate transactions—even as to aliens—is a historic and traditional state power, *see Sackett v. EPA*, 598 U.S. 651, 680 (2023) (states have "primary authority over land and water use"), SB 264 must be afforded the strongest presumption against preemption. Plaintiffs have failed to show any "clear and manifest purpose of Congress" to overcome this presumption, *Wyeth v. Levine*, 555 U.S. 555, 565 (2009), for several reasons.

First, it is implausible that Congress meant CFIUS review to occupy the field of real-estate transactions involving aliens. *See United States v. Alabama*, 691 F.3d 1269, 1281 (11th Cir. 2012). Not only is field preemption "rare," it also arises only if a federal

16

statute manifests an intent to displace all state regulation in a defined area. *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 651–52 (7th Cir. 2019) (the absence of any language to occupy the field "weighs heavily" against field preemption). Far from indicating any such intent, Congress has acquiesced in the centuries-long history of alien land restrictions by the states[4] by imposing such restrictions itself in localities subject to its authority. *See* 48 U.S.C. §§ 1501–1507 (territories and public lands); *id.* § 1508 (District of Columbia). The President and the Senate have also long used treaties as the device for displacing state-law restrictions on alien land ownership, reflecting their understanding that federal law otherwise leaves in place this longstanding state practice.[5]

Second, Plaintiffs have not met the "high threshold" of showing that SB 264 obstructs Congress's purposes in authorizing that regime. *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011). Far from conflicting, SB 264 and CFIUS comfortably co-exist. The scope of CFIUS review is limited. CFIUS reviews only "covered transactions" within a short statutory time frame, using eleven statutory factors to determine

---

[4] *See supra* 8–9.

[5] *See, e.g.*, David M. Golove, *Treaty-Making and the Nation: The Historical Foundations of the Nationalist Conception of the Treaty Power*, 98 Mich. L. Rev. 1075, 1104–10 (2000); Treaty of Amity and Commerce, Fr.-U.S., Feb. 6, 1778, art. XI, 8 Stat. 12, 18 (providing that subjects of France would be able to devise and inherit real property in the United States); Treaty Concerning the Encouragement and Reciprocal Protection of Investment, Alb.-U.S., Jan. 11, 1995, arts. I(1)(d)(iv), II(1), T.I.A.S. No. 98-104, at 2–4; *id.* art. XV(1)(a), at 12 (applying treaty requirements to all political subdivisions, including state and local governments); Treaty Concerning the Encouragement and Reciprocal Protection of Investment, Mozam.-U.S., Dec. 1, 1998, arts. I(d)(iv), II(1), T.I.A.S. No. 13006, at 2–4; *see also* James Frechter, *Alien Landownership in the United States: A Matter of State Control*, 14 Brook. J. Int'l L. 147, 168–71 (1988).

if a "covered transaction" poses a "national security" threat. 50 U.S.C. § 4565(b)(1)(A), (b)(1)(F), (b)(2), (f). If CFIUS identifies a threat and wishes to block a transaction, it refers the matter to the President, who makes the final call via executive order. 50 U.S.C. § 4565(d), (*l*)(2). Only in 2018 did CFIUS receive authorization to review *any* real-estate transactions. 50 U.S.C. § 4565(a)(4)(A)(ii), (B)(ii); Mot. App. 46. Now, CFIUS reviews proposed real-estate transactions by foreign nationals or companies only when the property lies (1) within an air or maritime port; or (2) close to a military installation or sensitive federal government property. 50 U.S.C. § 4565(a)(4)(B)(ii). This definition excludes "single housing unit[s]," "urbanized areas," and property near privately owned sensitive infrastructure. *See* 50 U.S.C. § 4565(a)(4)(B)(ii), (C). CFIUS also has narrow means of identifying a "covered transaction." The primary means is an investor's written notice, which is mostly voluntary, 50 U.S.C. § 4565(b)(1)(C)(i)(I), and is never mandatory for real-estate transactions.

Given CFIUS's limited review and resources, this regime reflects Congress's judgment that the federal government's role in regulating alien landownership should be limited. It hardly evinces a "clear and manifest" congressional determination that any real-estate transaction not blocked by the President is free of national-security concern and must therefore be allowed. *Wyeth*, 555 U.S. at 565. For this same reason, state laws barring transactions beyond CFIUS's authority or capacity to review do not interfere with federal foreign policy. SB 264 is a permissible exercise of Florida's sovereign prerogative to protect its own land and citizens. The courts in *Crosby v. National Foreign*

18

*Trade Council*, 530 U.S. 363 (2000), and *Odebrecht Construction, Inc. v. Secretary, Florida Department of Transportation*, 715 F.3d 1268 (11th Cir. 2013) were faced with completely different federal statutes and considerations, and so their logic does not "apply here with equal force" as Plaintiffs contend. Mot. 16; *see also* Initial Br. 35. CFIUS's inability to review a given real-estate transaction, which largely stems from its jurisdictional and resource limitations, reflects no congressional purpose that a law like Florida's would disrupt.

Plaintiffs assert (at 15) that Florida is waging an "economic war" with China and point to legislators' expressions of concern (at 18) about security threats posed by China. But as the district court found, that evidence at most reflects a permissible aim of protecting Floridians, not changing China's policies. Mot. App. 49. Plaintiffs also claim (at 18) that Florida cannot "single out particular countries and nationalities." This Court, however, held otherwise in rejecting a preemption challenge to a Florida law that limited travel by state employees to particular countries that support terrorism. *See Fac. Senate of Fla. Int'l Univ. v. Winn*, 616 F.3d 1206, 1210–11 (11th Cir. 2010). Plaintiffs point to the fact that the Chinese Embassy has issued informal statements criticizing SB 264, but that is a far cry from the formal diplomatic protests found to be of concern in *Crosby* and *Odebrecht*. Mot. 17; *see Crosby*, 530 U.S. at 364 (noting that "foreign governments ha[d] filed formal protests with the National Government and lodged formal complaints against the United States in the World Trade Organization"). A hostile foreign country cannot trigger federal preemption by issuing a press release about a state law.

More telling is that the federal government, which below filed a statement of interest opposing Florida's law on other grounds, did not contend that Florida's law was preempted by the CFIUS regime or by any other facet of its foreign affairs authority. Plaintiffs claim (at 21 n.7) that no inference can be drawn from that silence, because the United States waited until the Supreme Court proceedings in *Crosby* to weigh in on foreign affairs issues. *See Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 54 n.9 (1st Cir. 1999) (noting that the "Executive Branch ha[d] not taken an official position" at the First Circuit), *aff'd*, *Crosby*, 530 U.S. 363 (2000). But here, the United States has already participated—unusually—at the district-court level, making its silence on the CFIUS preemption claim even more deafening. Notably, the U.S. Solicitor General does not seem to have authorized the United States to support Plaintiffs on appeal in any respect. *See* 28 C.F.R. § 0.20(c).

## II.    THE REMAINING EQUITABLE FACTORS ALSO DO NOT SUPPORT AN INJUNCTION.

The equities also disfavor an injunction pending appeal. First, an injunction is not necessary "to preserve the court's power to render a meaningful decision after a trial on the merits." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) (citation omitted). Plaintiffs' only asserted exigency was Plaintiff Xu's open contract, which they imply (at 2) needed to close in September, or else it would vanish forever. But September apparently passed without the sky falling, and Plaintiffs'

opening brief reveals that Xu's "contract has not yet been terminated." Initial Br. 52 (filed October 2).

That makes sense. Both Shen's and Xu's contracts are exempted by SB 264's grandfather clause, which provides that if an individual owned or acquired "any interest in real property" before July 1, 2023, that person may continue to "own or hold such real property." Fla. Stat. § 692.204(3). Plaintiff Xu became the "owner of [the] property" when he acquired "equitable title" through execution of the contract in April 2023. *Accardo v. Brown*, 139 So. 3d 848, 852–53 (Fla. 2014); *see also* Mot. App. 138. That reading is bolstered by the interpretive canon that laws should not be given retroactive effect without an express legislative statement, *Fla. Ins. Guar. Ass'n v. Devon Neighborhood Ass'n*, 67 So. 3d 187, 194–96 (Fla. 2011), and by a proposed regulation of the Department of Commerce adopting that interpretation of the grandfather clause.[6] And both Shen's and Xu's contracts provide that the builder-seller can select any date for closing in its discretion up to and including April 2025. *See* Mot. App. 129–30, 138 (noting that the builder-seller has two years from the date of signing, in April 2023, to complete the building and "has the right in its sole discretion to schedule the date and place for the closing" within that timeframe); Mot. App. 110–12, 115 (similar).

Plaintiffs' alleged harms are either speculative, reparable, or based on the mistaken view that their conduct is proscribed. None of Plaintiffs' alleged harms would

---

[6] *See* Fla. Admin. Register 73C-60.002, https://www.flrules.org/Gateway/View_notice.asp?id=27574595.

outweigh the harm that Florida and its citizens would suffer if SB 264 were enjoined pending a full merits determination. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). For that same reason, enjoining SB 264 would disserve the public interest. *See Swain v. Junior*, 958 F.3d 1081, 1293 (11th Cir. 2020) (balance-of-the-harms and public-interest factors "merge" when "the Government is the [opposing] party").

## III.   ANY INJUNCTION SHOULD BE CAREFULLY TAILORED.

Any injunction should be limited to the Plaintiffs before the Court and those parts of SB 264 where the Court considers Plaintiffs to be likely to succeed. *See Georgia v. President of the U.S.*, 46 F.4th 1283, 1303–04 (11th Cir. 2022) (opinion of Grant, J., joined by Anderson, J.) (equitable remedies should be limited to proven harms). Wang, for instance, claims no intent to purchase property and can challenge only SB 264's property-registration requirements; any injunction in her favor should be limited to that provision. Mot. App. 148. And Multi-Choice should not be allowed an injunction for an unspecified universe of prospective clients, which would anoint Multi-Choice with far greater power under the FHA than possessed by even the U.S. Attorney General, who can enforce the FHA only in carefully cabined circumstances. *See* 42 U.S.C. § 3614(a); *id.* § 3614(b)(1)(A). Finally, the FHA addresses only residential property, *id.* § 3602(b); any injunction granted on that basis should be limited accordingly.

## IV.    FLORIDA DOES NOT OPPOSE EXPEDITION.

Plaintiffs have also sought expedition in their motion. Mot. 27. Florida does not oppose the briefing schedule Plaintiffs propose and scheduling oral argument for the next available (that is, vacant) oral-argument calendar.

## CONCLUSION

The Court should deny Plaintiffs an injunction pending appeal.

Respectfully submitted,

October 30, 2023

ASHLEY MOODY
  *Attorney General of Florida*

*/s/ Henry C. Whitaker*

DANIEL E. NORDBY
Shutts & Bowen LLP
215 South Monroe Street, Suite 804
Tallahassee, FL 32301
(850) 241-1725
*dnordby@shutts.com*

HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
NATHAN A. FORRESTER
  *Senior Deputy Solicitor General*
DAVID M. COSTELLO
  *Deputy Solicitor General*
ROBERT S. SCHENCK
  *Assistant Solicitor General*

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
*Counsel for Defendants-Appellees*     *henry.whitaker@myfloridalegal.com*

## CERTIFICATE OF COMPLIANCE

This document complies with Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,070 words.

This document complies with the typeface and type-style requirements of Fed. R. App. P 27, Fed. R. App. P. 32(a)(5), and Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

> /s/ Henry C. Whitaker
> Solicitor General

## CERTIFICATE OF SERVICE

I certify that on October 30, 2023, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Henry C. Whitaker*
Solicitor General