No. 23-12737

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

YIFAN SHEN, et al.,

*Plaintiffs–Appellants,*

v.

WILTON SIMPSON, in his official capacity as
Florida Commissioner of Agriculture, et al.,

*Defendants–Appellees.*

On Appeal from the United States District Court
for the Northern District of Florida, No. 4:23-cv-208 (Winsor, A.)

### PLAINTIFFS–APPELLANTS' REPLY BRIEF

Ashley Gorski
Patrick Toomey
Shaiba Rather
Omar Jadwat
Sidra Mahfooz
Noor Zafar
**AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Keliang (Clay) Zhu
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
    SULLIVAN, LLP**
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

*Counsel list continued on the
following page.*

Cody Wofsy
**AMERICAN CIVIL LIBERTIES**
    **UNION FOUNDATION**
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org

Daniel B. Tilley
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2707
dtilley@aclufl.org

Bethany Y. Li
Elizabeth Koo
Razeen Zaman
**ASIAN AMERICAN LEGAL**
    **DEFENSE AND EDUCATION**
    **FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
bli@aaldef.org

Nicholas L.V. Warren
**ACLU FOUNDATION OF FLORIDA**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

*Attorneys for Plaintiffs–Appellants*

Case No.: 23-12737                                      *Shen, et al. v. Simpson, et al.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Circuit Rule 26.1-2(b), Plaintiffs–Appellants certify that the

Certificate of Interested Persons and Corporate Disclosure Statement contained in

Plaintiffs–Appellants' Principal Brief is complete.


Dated: November 16, 2023                    */s/ Ashley Gorski*_____
                                            Ashley Gorski
                                            American Civil Liberties Union
                                                Foundation

                                            *Attorney for Plaintiffs–Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT..................................................................C-1

TABLE OF CONTENTS........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ...................................................................................1

ARGUMENT ...........................................................................................2

I.      SB 264 violates federal statutory law and the Constitution..........................2

      A.    SB 264 violates the Fair Housing Act. .....................................2

            1. Plaintiffs can challenge SB 264 under the FHA...............................2

            2. SB 264 facially discriminates based on national origin. ..................3

            3. SB 264 has a disparate impact based on national origin and race.....4

            4. SB 264 intentionally discriminates....................................7

      B.    SB 264 violates the Equal Protection Clause. .......................9

      C.    SB 264 is preempted by FIRRMA. ......................................11

      D.    SB 264 is unconstitutionally vague. .....................................18

II.    Plaintiffs have standing..................................................................21

III.   The equities strongly favor Plaintiffs..........................................25

IV.   The Court should categorically enjoin SB 264's enforcement with
    respect to residential property. ..................................................27

CONCLUSION........................................................................................27

CERTIFICATE OF COMPLIANCE.......................................................29

CERTIFICATE OF SERVICE ................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
    57 F.4th 791 (11th Cir. 2022) ................................................................4

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)............................................................................12

*Bangerter v. Orem City Corp.*,
    46 F.3d 1491 (10th Cir. 1995) ............................................................2

*Barclays Bank PLC v. Franchise Tax Bd.*,
    512 U.S. 298 (1994)............................................................................16

*Baumann v. Savers Fed. Sav. & Loan Ass'n*,
    934 F.2d 1506 (11th Cir. 1991) ..........................................................7

*\*Bernal v. Fainter*,
    467 U.S. 216 (1984)................................................................. 10, 11

*Brnovich v. Democratic Nat'l Comm.*,
    141 S. Ct. 2321 (2021).........................................................................8

*Chamber of Com. v. Whiting*,
    563 U.S. 582 (2011)................................................................. 14, 15

*Clark v. Allen*,
    331 U.S. 503 (1947)............................................................................16

*\*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000)................................................................. 13, 14

*Crown Castle Fiber LLC v. City of Pasadena*,
    76 F.4th 425 (5th Cir. 2023) ............................................................12

*Dandamudi v. Tisch*,
    686 F.3d 66 (2d Cir. 2012) ...............................................................10

*Elston v. Talladega Cnty. Bd. of Educ.*,
    997 F.2d 1394 (11th Cir. 1993) ..........................................................8

*Estrada v. Becker*,
917 F.3d 1298 (11th Cir. 2019) ..........................................................10

*Fac. S. of Fla. Int'l Univ. v. Winn*,
616 F.3d 1206 (11th Cir. 2010) ..........................................................16

*Garcia-Bengochea v. Carnival Corp.*,
57 F.4th 916 (11th Cir. 2023) ............................................................25

*Greater Birmingham Ministries v. Sec'y of State for Ala.*,
992 F.3d 1299 (11th Cir. 2021) ............................................................8

*Gresham v. Windrush Partners, Ltd.*,
730 F.2d 1417 (11th Cir. 1984) ..........................................................25

*Griggs v. Duke Power Co.*,
401 U.S. 424 (1971)..............................................................................5

*Guinn v. United States*,
238 U.S. 347 (1915)..............................................................................4

*Hines v. Davidowitz*,
312 U.S. 52 (1941)..............................................................................12

*Indigo Room, Inc. v. City of Fort Myers*,
710 F.3d 1294 (11th Cir. 2013) ..........................................................21

*Johnson v. U.S. Dep't of Agric.*,
734 F.2d 774 (11th Cir. 1984) ............................................................26

*Juarrero v. McNayr*,
157 So. 2d 79 (Fla. 1963) ...................................................................23

*Louisiana ex rel. Gremillion v. NAACP*,
366 U.S. 293 (1961)...................................................................... 21, 22

*Maryland v. King*,
567 U.S. 1301 (2012)..........................................................................26

*Matter of Cooke*,
412 So. 2d 340 (Fla. 2019) .......................................................... 23, 24

*Meisman v. Hernandez*,
  353 So. 3d 669 (Fla. 2d DCA 2022) ..................................................23

*Minick v. Minick*,
  149 So. 483 (Fla. 1933) ..................................................................23

*Newton v. Duke Energy Fla., LLC*,
  895 F.3d 1270 (11th Cir. 2018) .......................................................11

*Odebrecht Const., Inc. v. Sec'y, Fla. Dep't of Transp.*,
  715 F.3d 1268 (11th Cir. 2013) ........................................ 13, 15, 16

*Papachristou v. Jacksonville*,
  405 U.S. 156 (1972)..........................................................................20

*Perez v. Perez*,
  164 So. 2d 561 (Fla. 3d DCA 1964) ...............................................23

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
  758 F.3d 296 (D.C. Cir. 2014) ........................................................12

*Rice v. Cayetano*,
  528 U.S. 495 (2000)........................................................................3, 4

*Russello v. United States*,
  464 U.S. 16 (1983)............................................................................15

*Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*,
  46 F.4th 1268 (11th Cir. 2022) ..........................................................7

*SEC v. Big Apple Consulting USA, Inc.*,
  783 F.3d 786 (11th Cir. 2015) ...........................................................7

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)............................................................................12

*SisterSong Women of Color Reprod. Just. Collective v. Gov. of Ga.*,
  40 F.4th 1320 (11th Cir. 2022) ........................................................21

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)............................................................. 1, 21, 22

iv

*Terrace v. Thompson*,
  263 U.S. 197 (1923) ................................................................ 9, 10

*\*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) ................................................... 2, 5, 6, 27

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205 (1972) ........................................................... 27

*United States v. Alabama*,
  691 F.3d 1269 (11th Cir. 2012) .......................................... 18

*United States v. Hedges*,
  912 F.2d 1397 (11th Cir. 1990) .......................................... 20

*United States v. Pink*,
  315 U.S. 203 (1942) ........................................................... 18

*United States v. Waymer*,
  55 F.3d 564 (11th Cir. 1995) ............................................. 19

*Vill. of Hoffman Est. v. Flipside, Hoffman Est., Inc.*,
  455 U.S. 489 (1982) ........................................................... 20

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................... 21

*Weber v. Weber*,
  929 So. 2d 1165 (Fla. 2d DCA 2006) ............................... 19

*Zschernig v. Miller*,
  389 U.S. 429 (1968) ........................................................... 18

## Constitutional Provisions

Fla. Const. art. V § 21 ......................................................... 24

## Statutes

42 U.S.C. § 1983 ................................................................ 11

42 U.S.C. § 3614 ................................................................ 27

42 U.S.C. § 3615 .................................................................. 2

48 U.S.C. § 1501 ...................................................................................14

50 U.S.C. § 4556 ...................................................................................12

Fla. Stat. § 692.204 ............................................................... 19, 20, 24, 26

**Regulations**

8 C.F.R. § 214.2 ...................................................................................24

24 C.F.R. § 100.500 ...............................................................................5

88 Fed. Reg. 19450 (May 1, 2023) ..........................................................5

**Treatises**

5 Tiffany Real Prop. § 1258 (3d ed.) ......................................................24

77 Am. Jur. 2d Vendor & Purchaser § 251 ..............................................24

**Other Sources**

United Nations Statistics Division, UNData, China,
    https://data.un.org/en/iso/cn.html ...................................................4

United Nations Statistics Division, UNData, Hong Kong,
    https://data.un.org/en/iso/hk.html ...................................................4

United Nations Statistics Division, UNData, Macau,
    https://data.un.org/en/iso/mo.html ..................................................4

Yam, Kimmy, *How DeSantis' Ban on Chinese Homeownership Has
    Affected Buyers & Real Estate Agents*, NBC News (Oct. 17, 2023),
    https://perma.cc/QG27-Q36G............................................................26

## INTRODUCTION

Plaintiffs have established their entitlement to a preliminary injunction. Virtually everyone "domiciled" in China is of Chinese national origin—a fact that the State does not meaningfully dispute. By restricting home purchases based on Chinese "domicile," SB 264 is actually restricting the purchases of Chinese people, in violation of the Fair Housing Act (FHA) and Equal Protection Clause.

SB 264 is also preempted by the federal government's carefully drawn system for regulating real estate purchases that implicate foreign affairs and national security. Florida does not dispute that SB 264 involves delicate foreign policy judgments and consequences; instead, it claims the right to make those judgments and impose those consequences on the nation. That argument is squarely foreclosed by precedent.

The district court correctly rejected the State's contention that none of the Plaintiffs have standing. The individual Plaintiffs are at least "arguably" domiciled in China, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014), and the State's litigation position on "domicile" cannot protect Plaintiffs from prison. If anything, the conflict between the district court and State interpretations of "domicile" underscores how unconstitutionally vague SB 264 is.

Finally, the equities overwhelmingly favor Plaintiffs. The State cites fears about agricultural land purchases—but those have nothing to do with ordinary

Chinese people, like Plaintiffs, buying homes. Meanwhile, the individual Plaintiffs are denied unique, irreplaceable properties; Multi-Choice Realty is losing clients due to SB 264; and across the state, Chinese people are being denied the opportunity to buy a home.

## ARGUMENT

### I.    SB 264 violates federal statutory law and the Constitution.

#### A.    SB 264 violates the Fair Housing Act.

##### 1.    Plaintiffs can challenge SB 264 under the FHA.

As Plaintiffs have explained, because SB 264 is itself a discriminatory housing practice and "require[s] . . . a discriminatory housing practice," it is "invalid" and cannot be enforced. 42 U.S.C. § 3615; Pls. Br. 12. The State contends that because SB 264 is a law, it cannot constitute a "discriminatory housing practice" under the FHA. Resp. 28-29. The Supreme Court says otherwise, explicitly treating "laws" as "practices" that private plaintiffs can challenge under the FHA. *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 521, 539-40 (2015) (collecting cases); *see also Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1499 n.15 (10th Cir. 1995) ("the law of a state . . . is expressly preempted by the [FHA] if

it is a 'discriminatory housing practice'").[1] The district court thus properly declined to accept the State's argument. A356-58.

## 2. SB 264 facially discriminates based on national origin.

The State contends that SB 264 does not facially discriminate because it does not include the words "national origin." Resp. 21-22. But when a legislature uses a proxy to discriminate against a protected class, courts analyze this as facial discrimination—including in the FHA context, *contra* Resp. 29—and do not require a separate showing of discriminatory intent. Pls. Br. 15-16.

The State also argues that because some Chinese people are not harmed by SB 264, the statute is not facially discriminatory. Resp. 21. However, as Plaintiffs have explained, almost every proxy is under- and over-inclusive to some degree. Pls. Br. 15-17. For example, in *Rice v. Cayetano*, 528 U.S. 495, 514-17 (2000), the Court held that ancestry functioned as a proxy for race in a statute that restricted voting to descendants of people who inhabited the Hawaiian Islands in 1778. Hawaii argued that the statute was neutral because "ancestry" and "race" were not coextensive: some inhabitants of Hawaii in 1778 were not Polynesian, and not all Polynesian people lived in Hawaii. *Id.* at 514. The Court rejected this argument, observing that

---

[1] Even if the State were correct about Section 3615 (and it is not), it would change nothing. As explained *infra* Part I.C, the generally available equitable cause of action permits preemption claims, and if Section 3615 does not address them, it does not foreclose them.

"[s]imply because a class defined by ancestry does not include all members of the race does not suffice to make the classification race neutral." *Id.* at 516-17; *see* Pls. Br. 15-17 (citing, *inter alia*, *Guinn v. United States*, 238 U.S. 347, 364-65 (1915)).[2]

Rather than confront those holdings, the State attempts to distinguish *Rice* and *Guinn* on the ground that the legislative motives were "painfully apparent" in those cases. Resp. 23. But so too, here. Virtually everyone domiciled in China is of Chinese national origin. Against that backdrop, Florida's legislature enacted legislation that targets Chinese people—relying on pernicious stereotypes to treat them as mere pawns of the CCP.[3]

### 3. SB 264 has a disparate impact based on national origin and race.

In any event, the disparate impacts of SB 264 on people born in China and on people who are Asian are undeniable. The State itself acknowledges that domicile and national origin "indeed substantially overlap." Dkt. 46 at 10. Under the FHA,

---

[2] The State's cases concerning sex discrimination are inapposite. Resp. 21-23. For example, *Adams ex rel. Kasper v. School Board of St. Johns County* did not consider whether "biological sex" is a *proxy* for "transgender status," and here, there is no "lack of identity" between domicile and national origin. 57 F.4th 791, 809 (11th Cir. 2022) (en banc).

[3] The State does not seriously dispute Plaintiffs' UN statistic, Resp. 22 n.5, or that more than 99% of people domiciled in China are of Chinese origin, even including Hong Kong and Macau. *See* United Nations Statistics Division, UNData, China, https://data.un.org/en/iso/cn.html; Hong Kong, https://data.un.org/en/iso/hk.html; Macau, https://data.un.org/en/iso/mo.html. In any event, the State's quibbles have no bearing on Plaintiffs' likelihood of success.

this disparate impact is unlawful, because the State has failed to establish that its policy is "necessary" to achieve a valid interest. *Inclusive Cmtys.*, 576 U.S. at 541.

Contrary to the State's conclusory assertion, Resp. 30, there is no doubt that "defendant's policy [is] causing" a disparate impact on Chinese people. *Inclusive Cmtys.*, 576 U.S. at 542. The causation requirement "protects defendants from being held liable for racial disparities they did not create," *id.*, but there is no such concern with SB 264, which expressly discriminates against people domiciled in China— overwhelmingly (if not exclusively) harming people born in China, people of Chinese ancestry, and people who are Asian.

Under the FHA's burden-shifting framework, Pls. Br. 22, the *State* bears the burden of establishing that SB 264 is "necessary" to achieve "substantial, legitimate, nondiscriminatory interests." *Inclusive Cmtys.*, 576 U.S. at 527, 541; 24 C.F.R. § 100.500. Thus, contrary to the State's claim, Resp. 30, it cannot be *Plaintiffs'* burden to establish that SB 264 is "artificial, arbitrary, and unnecessary" (though they have done so).[4] The State has not even attempted to meet its burden. Below, the State did not argue that SB 264's broad sweep was "necessary" to advance any interest, waiving any such argument. And it conceded that the statute would fail strict

---

[4] *See* 88 Fed. Reg. 19450, 19462 (May 1, 2023) (HUD rule implementing FHA and explaining that "the source" of the "artificial, arbitrary, and unnecessary" language is *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), "[which] did not require plaintiffs to establish that the practice at issue met each of these three descriptors").

scrutiny. A338. On appeal, it makes one fleeting reference to necessity, citing a proposed large-tract agricultural purchase in another state. Resp. 5. But it does not—and cannot—establish that restricting the housing of Chinese people in Florida is necessary to advance nondiscriminatory interests.

However, *even if* the State could meet its burden, Plaintiffs would still prevail, because they would have the opportunity to show that any "substantial, legitimate, nondiscriminatory interests" supporting SB 264 "could be served by another practice that has a less discriminatory effect." *Inclusive Cmtys.*, 576 U.S. at 527. Plaintiffs have established that the State's interests in restricting *homeownership* are illegitimate, insubstantial, and discriminatory, as it has cited no evidence of a nexus between homeownership by Chinese people in Florida and harm to national or state security. Plaintiffs have also explained that a law limited to foreign powers and their agents would serve the State's purported objectives, with less disparate impact on ordinary Florida residents like Plaintiffs. Pls. Br. 22, 27-28; Dist. Ct. Dkt. 21 at 18, 20-21 (explaining that SB 264 does not advance a legitimate interest, *contra* Resp. 23 n.6).[5]

---

[5] The State's claim that it has "demonstrated" many "justifications" for SB 264 does not hold water. Resp. 23 n.6. Its "justifications" were generic, unsubstantiated invocations of public safety and state security, without reference to any harm posed by Chinese persons' homeownership. Dist. Ct. Dkt. 56 at 26. Any hypothetical concern about landlord absenteeism is belied by SB 264's targeting of specific countries and would not justify restrictions on Florida residents like Plaintiffs.

Finally, the State errs in suggesting that this Court cannot address Plaintiffs' disparate-impact claim unless it holds that the district court abused its discretion in declining to do so. Resp. 30. Because Plaintiffs did raise this claim below, *see* Pls. Br. 22-23 (citing district court briefing), with "supporting arguments and authority," *SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 811-12 (11th Cir. 2015), it is properly before the Court. But even when plaintiffs fail to raise an issue in the district court, an appellate court will entertain it where, as here, the proper resolution is beyond doubt, substantial justice is at stake, or the issue presents questions of great public concern. *Baumann v. Savers Fed. Sav. & Loan Ass'n*, 934 F.2d 1506, 1512 (11th Cir. 1991).

### 4.    SB 264 intentionally discriminates.

Plaintiffs have established, at a minimum, that national origin played "some role" in SB 264's enactment, in violation of the FHA. *Sailboat Bend Sober Living, LLC v. City of Ft. Lauderdale*, 46 F.4th 1268, 1281 (11th Cir. 2022). *See* Pls. Br. 17-21; *id.* at 28-30 (discussing additional evidence of discrimination in context of equal protection claim).

The State is wrong to argue that clear-error review applies to the analysis of intentional discrimination. Resp. 24. It cites *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321, 2334, 2348-49 (2021), but *Brnovich* addressed the standard of review for factual findings at trial. Here, the relevant facts were not in

dispute. A325. Where, as here, a court's decision rests on the "legal significance" it attributes to facts, its decision is reviewed de novo. *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1405 (11th Cir. 1993). Regardless, even if clear-error review applied, the district court clearly erred. Pls. Br. 17-21, 28-30; *see* A350-54.

On the merits, Plaintiffs' evidence establishes an immense disparate impact and the foreseeability of that impact, as the State practically concedes. *See* Resp. 25. These two factors speak directly to legislative intent. *See Greater Birmingham Ministries v. Sec'y of State for Ala.*, 992 F.3d 1299, 1322 (11th Cir. 2021).

Attempting to minimize the contemporary statements of lawmakers, Resp. 25, the State simply ignores how Governor DeSantis and legislators have relied on pernicious stereotypes to conflate Chinese people with the government of China. Their silence is understandable: there is no justification, for example, for Governor DeSantis's tweet about this case, which wrongly implied that Plaintiffs are "CCP-tied entities." Pls. Br. 19-20.

The availability of less-discriminatory alternatives is further evidence of discriminatory intent. *Birmingham Ministries*, 992 F.3d at 1322. The State claims that alternatives are impossible because the statute's prohibitions on people "domiciled" in China will "prevent circumvention of the law by totalitarian governments." Resp. 25-26. But it offers no evidence to substantiate that concern. Nor does the State explain why ordinary law enforcement tools could not be used to

identify straw-purchasers acting as agents of the Chinese government. The State's one cited example involved the potential purchase of large-tract agricultural land in North Dakota by a Chinese company. Resp. 5. That example bears no resemblance to home purchases by ordinary Chinese people like Plaintiffs who live, work, and study in Florida, and who are unaffiliated with the Chinese government.

Finally, the fact that the Florida legislature provided limited exceptions to its prohibitions, Resp. 26, does not justify the law's discriminatory reach. Governor DeSantis and legislators specifically chose to sweep in countless ordinary Chinese people—discriminating against them "because of," not "in spite of," where they come from. *Contra* A352.

**B.    SB 264 violates the Equal Protection Clause.**

SB 264 violates equal protection because it discriminates based on alienage, national origin, race, and ethnicity. Pls. Br. 23-30. With respect to alienage discrimination specifically, the State advances several arguments, each meritless.

As an initial matter, the State is wrong to argue that the law in *Terrace v. Thompson*, 263 U.S. 197 (1923), is indistinguishable from SB 264. Resp. 16-17. The Supreme Court in *Terrace* characterized the Washington law at issue as "applying alike and equally to all aliens," and not based on "race and color." 263 U.S. at 218, 220. While the State is correct that the Washington statute referenced federal law, the Washington statute did not expressly single out any particular country—and the

9

Supreme Court's characterization of the law as even-handed was key to its analysis. *See id.*

The State is also wrong to argue that because SB 264 exempts lawful permanent residents, heightened scrutiny does not apply. Resp. 17-19. As Plaintiffs have explained, the Supreme Court has characterized "aliens as a class" as a discrete and insular minority, *Bernal v. Fainter*, 467 U.S. 216, 219 n.5 (1984), and it has repeatedly applied strict scrutiny to laws discriminating against noncitizens residing in the United States, without regard to whether those noncitizens are lawful permanent residents, Pls. Br. 28. *Estrada v. Becker*, 917 F.3d 1298, 1310 (11th Cir. 2019), does not support a different result, as it concerned limited access to postsecondary education for DACA recipients, whom the Court described as "inadmissible and thus removable." The Court explained that such limitations neither "strike[] at appellants' ability to exist in the community nor conflict[] with any congressional determination." *Id*. at 1309. SB 264 prevents people specifically authorized by statute to live here for years on visas or pursue asylum from purchasing a place to live in Florida communities. *Estrada* thus cuts against Florida here, and any contrary out-of-circuit precedent is wrong. *See Dandamudi v. Tisch*, 686 F.3d 66, 72 (2d Cir. 2012).

The State's remaining arguments likewise fail. Resp. 19-20. The "narrowly construed" political-function exception is inapposite: it applies only to alienage

discrimination in certain government jobs. *Bernal*, 467 U.S. at 220-22. And the State's appeal to historical practice is beside the point. The equal protection analysis does not turn on whether discrimination was historically acceptable.[6]

### C.    SB 264 is preempted by FIRRMA.

SB 264 wrests control of foreign affairs from the federal government and replaces Congress's carefully crafted approach with the far more draconian regime Florida prefers. Pls. Br. 30-45. The State's defenses are unavailing.

1.    The district court rightly declined to accept the State's argument that Plaintiffs have no cause of action for their FIRRMA preemption claim. Florida does not dispute the general equitable "right of action to assert a preemption claim seeking injunctive relief." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1276 (11th Cir. 2018) (cleaned up). Unlike attempts to derive an implied cause of action "from the statute itself or under 42 U.S.C. § 1983," Resp. 31, Congress must act to *displace* the equitable cause of action, *see Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327-28, 331-32 (2015) (analyzing these issues separately); *Crown Castle Fiber LLC v. City of Pasadena*, 76 F.4th 425, 434 (5th Cir. 2023) (same).

---

[6] As to the state laws in effect today, no other state has a law as restrictive as Florida's—or even close. Most of these laws restrict only purchases of agricultural land, public land, or large-tract land. Of the remaining laws, virtually none impose restrictions on people, like the individual Plaintiffs, who live inside the United States; and none are as sweeping as SB 264.

Nothing in FIRRMA does so. That Congress addressed review of actions taken *under* FIRRMA, Resp. 31, says nothing about challenging a state's preempted alternative scheme. Nor does 50 U.S.C. § 4556, a general statute that long predates CFIUS. If this Court were to accept such flimsy evidence, it would gut the longstanding equitable authority to entertain preemption challenges. *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). *Armstrong* shows just how high the bar is. 575 U.S. at 323-24, 328, 332. There, private plaintiffs claimed that a state had violated its Medicaid agreement with the federal government. *Id.* Congress provided for withholding of federal funds as the "sole remedy" for such a breach. *Id.* at 328. Even that, the Court emphasized, "might not, *by itself*, preclude the availability of equitable relief," as it went on to cite the "judicially unadministrable" nature of the statute's requirements to find displacement. *Id.* (emphasis in original). Florida points to nothing remotely similar here.

2.     On the merits, the State does not contest that the prohibition of real estate purchases by foreign nationals calls for "judgment in the realm of foreign policy," *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314 (D.C. Cir. 2014), or that such actions will frequently have repercussions in the realm of foreign policy, Pls. Br. 35-36; *see Hines v. Davidowitz*, 312 U.S. 52, 64 (1941). Instead, Florida's bottom-line argument is that it has the *right* to subject the entire country to

whatever foreign policy consequences may result from its decision to target certain foreign powers and their nationals. Respectfully, that is not the law.

*Odebrecht Construction, Inc. v. Secretary, Florida Department of Transportation*, 715 F.3d 1268 (11th Cir. 2013), and *Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000), control here. Notably, the State does not attempt to defend the district court's effort to distinguish those cases as involving state laws "designed to put economic pressure on foreign nations." A367. As Plaintiffs explained, Pls. Br. 34-39, the federal interest in foreign relations is not so limited, and the President's authority to "to speak for the Nation with one voice," *Odebrecht*, 715 F.3d at 1272, cannot be so artificially cabined.

Instead, the State's primary response is the radical claim that Congress *invited* states to enact laws like SB 264 that set sweeping policies vis-à-vis particular foreign countries. Resp. 3. In Florida's view, Congress wanted to let individual states dictate foreign policy by deciding which countries to deem enemies and how harshly to treat their nationals. There is absolutely no evidence to support that far-fetched theory.

*First*, nothing in FIRRMA remotely suggests that Congress wanted to allow such state intrusions into foreign affairs. Congress took care to ensure that the President carefully weighed the various considerations implicated by barring real estate purchases, including sensitive foreign policy concerns. Pls. Br. 32, 35-36. The State asserts that "'[p]art of that balance' was 'allocating authority between the

13

Federal Government and the States.'" Resp. 36 (quoting *Chamber of Com. v. Whiting*, 563 U.S. 582, 606-07 (2011)). But *Whiting* addressed an express preemption provision with a carveout for "licensing and similar laws," such that Congress explicitly "preserved state authority." 563 U.S. at 607. Here, it did not.

*Second*, the State suggests the history of state land regulations indicates Congress blessed this intrusion. Resp. 32-33. But, as explained, Pls. Br. 45, *Crosby* rejected that argument, and it is certainly not enough to point to *even-handed* regulations when Florida is singling out particular countries and barring their nationals from home ownership, *see, e.g.*, 48 U.S.C. § 1501 (cited at Resp. 32).[7] The State still has not identified any statute similar to SB 264 at the time of FIRRMA's enactment.

*Third*, the absence of an express preemption provision does not imply that Congress invited states to enact laws targeting nationals of whatever countries they saw fit. *Crosby* itself made clear that no express provision is necessary to bar such state adventures in foreign policymaking. Pls. Br. 45. And the State's citations are simply inapposite. That treaties have exempted some countries from state laws,

---

[7] Contrary to Florida's claim, Resp. 33, *Crosby*'s analysis did not turn on the number of earlier state bills, *see* 530 U.S. at 387. Moreover, Massachusetts pointed to a long history of similar laws. Pls. Br. 44-45.

Resp. 32 n.8, 33, only reinforces that foreign policy choices are *federal*; it does not suggest a congressional interest in letting *states* choose foreign enemies.[8]

The State's other foreign affairs arguments attack strawmen. Plaintiffs have not advanced a new "dormant foreign affairs preemption theory." Resp. 40. But the federal government's constitutionally exclusive foreign-affairs authority weighs heavily in favor of preemption. *Odebrecht* emphasized that courts must be "especially mindful of state laws that might undermine the exercise of the President's large discretion in this area," particularly where, as here, "the President is acting at the zenith of his power," as supplemented by "the discretion afforded him by Congress." 715 F.3d at 1285; *see* Pls. Br. 39-40.

Nor have Plaintiffs argued that SB 264 is preempted merely because it impacts foreign nationals. Resp. 36. This law is extraordinary in that it targets Chinese nationals for severe discriminatory treatment. It is telling that Florida can muster no authority blessing any such state law. *See Whiting*, 563 U.S. at 601 (even-handed law tracked federal statute "in all material respects"); *Clark v. Allen*, 331 U.S. 503,

---

[8] The State mistakenly relies on an express preemption provision in a statute addressing a different subject and enacted in a separate subtitle of the omnibus bill that included FIRRMA. Resp. 35-36. By contrast, *Russello v. United States* drew an inference from contrasting language in the "immediately following subsection." 464 U.S. 16, 23 (1983). Here, the State's argument echoes one *Rusello* rejected: "Language in one statute usually sheds little light upon the meaning of different language in another statute, even when the two are enacted at or about the same time." *Id.* at 25.

517 (1947) (even-handed law that had only "incidental or indirect effect in foreign countries"); *Barclays Bank PLC v. Franchise Tax Bd.*, 512 U.S. 298 (1994) (even-handed tax law with no federal counterpart). The State suggests that even-handed laws are somehow "more intrusive into foreign affairs," Resp. 37, but that unexplained assertion flies in the face of *Crosby* and *Odebrecht.*

As for the state action in *Faculty Senate of Florida International University v. Winn*, 616 F.3d 1206 (11th Cir. 2010), it did not "'select[] by name a foreign country,'" had a "likely minimal" impact, and involved only "a minor or incidental brush with federal law," *Odebrecht*, 715 F.3d at 1287; *see* Pls. Br. 38-39. The State vaguely suggests the foreign policy consequences here are "remote," Resp. 14, but the law has an obvious and significant bearing on foreign relations—both because of the size of Florida's real estate market, and because this law singles out a foreign country and directly harms its nationals, Pls. Br. 38.

3.    The State's remaining arguments downplaying the conflict with FIRRMA likewise lack merit. Florida does not dispute that SB 264 addresses the same concerns as FIRRMA while eliminating the federal regime's nuance and imposing far harsher punishment. Indeed, it *emphasizes* what it views as FIRRMA's flaws, and that SB 264 goes "beyond CFIUS's authority." Resp. 32-33, 35. Precisely for that reason, SB 264 is preempted.

The State asserts that real estate is a "microscopic part" of the CFIUS regulatory system. Resp. 34. Exaggeration aside, that claim is irrelevant because SB 264 still contradicts Congress's specific judgments as to real estate. Pls. Br. 40. Nor do CFIUS's asserted "jurisdictional and resource limitations," Resp. 35, justify Florida's displacing those considered judgments. Congress has struck the balance it deemed appropriate—factoring in national security concerns where warranted, as well as the national security *benefits* of foreign investment. Pls. Br. 32. If Florida believes there are gaps in that regime, or more resources are needed, it may lobby Congress.

Perhaps most importantly, Congress categorically exempted individual home purchases from CFIUS review. Pls. Br. 41-42. SB 264's conflict with FIRRMA's scheme is particularly acute when it comes to home purchases close to military facilities. *See id*. More broadly, Florida has never even tried to explain what security harms supposedly arise from owning (rather than renting, for example) a single-family home.

The State stresses that the United States has not taken a position on the preemption claim in this case. Resp. 38. But Plaintiffs already explained that no inference can fairly be drawn from that. Pls. Br. 45 n.16. In any event, the administration's view is not determinative: *Zschernig v. Miller*, for example,

invalidated a law despite a government brief arguing that it did *not* "unduly interfere with the United States' conduct of foreign relations." 389 U.S. 429, 434 (1968).

Finally, the State contends that SB 264 must be afforded "the strongest presumption against preemption." Resp. 31. But this Court has already held the presumption inapplicable where a state law "impinge[s] on an area of core federal concern." *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012). Florida's law is no less "extraordinary and unprecedented" than Alabama's. *Id*. at 1293. Indeed, *United States v. Pink*, 315 U.S. 203 (1942), on which the State relies, squarely supports Plaintiffs. As the Supreme Court explained, applying no presumption against preemption:

> Here we are dealing with an exclusive federal function. If state laws and policies did not yield before the exercise of the external powers of the United States, then our foreign policy might be thwarted. These are delicate matters. If state action could defeat or alter our foreign policy, serious consequences might ensue. The nation as a whole would be held to answer if a State created difficulties with a foreign power.

*Id.* at 232. So too, here.

### D.    SB 264 is unconstitutionally vague.

The State attempts to brush off Plaintiffs' due process challenge, but SB 264 bears the hallmarks of an impermissibly vague, punitive statute. It threatens homebuyers with criminal charges—and requires them to sign an affidavit under penalty of perjury—when the *State* cannot even reliably say where individuals like Plaintiffs are "domiciled." A330-32. SB 264 subjects Plaintiffs and other purchasers

to strict liability if they are wrong about their domicile under the vagaries of Florida common law, or if they simply overlook one of the countless sites that may qualify as a "critical infrastructure facility" or a "military installation"—punishing Plaintiffs criminally even for an honest mistake. This lack of clear notice and strict criminal liability is precisely what due process forbids. Pls. Br. 46-47.

The State argues that SB 264 is not vague because the definition of "domicile" is "well-established" under Florida law, Resp. 27, but the State and the district court could not even agree on its meaning and application here, A330-31. While "domicile" may be adequately defined for a general divorce or long-arm statute, SB 264 is different: it specifically singles out individuals on nonimmigrant visas, for whom Florida's common law is far from settled, *see infra* Part II, and it makes them criminally liable if they are mistaken, Fla. Stat. § 692.204(8)-(9); Pls. Br. 50. The State cites *Weber v. Weber* to argue that the meaning of "domicile" is clear as to visa-holders, but *Weber* does not even interpret that term. Resp. 27 (citing 929 So. 2d 1165 (Fla. 2d DCA 2006)). It addresses the meaning of "residence," which the legislature could have used in SB 264 but did not.

Although the State denies it, strict liability offenses are judged differently, especially when they criminalize typically innocent acts like buying a home. *See United States v. Waymer*, 55 F.3d 564, 568 (11th Cir. 1995) ("The constitutionality of a vague statutory standard is closely related to whether the standard incorporates

a requirement of *mens rea*."); *Papachristou v. Jacksonville*, 405 U.S. 156, 162-63 (1972) (vagrancy ordinance void for vagueness where it lacked specific intent requirement and criminalized activities that are "normally innocent"). The State does not suggest a scienter requirement for purchasers should be read into the statute, Resp. 27; that is no surprise, given that the Florida legislature made a deliberate choice to impose strict criminal liability on purchasers but not on sellers, Fla. Stat. § 692.204(8).

The State's cases are consistent with the heightened scrutiny the Supreme Court applies to strict liability statutes. *Village of Hoffman Estates v. Flipside, Hoffman Estates* "recognized that a scienter requirement may mitigate a law's vagueness," but held that the law simply was not vague as applied to the defendant's conduct. 455 U.S. 489, 499 (1982). The law in *United States v. Hedges*, 912 F.2d 1397, 1402 (11th Cir. 1990), lacked a specific intent requirement, but its last element carried a knowledge requirement that performed a comparable function—something SB 264 lacks altogether for purchasers.

Lastly, SB 264's affidavit requirement drives home the impossible dilemma homebuyers face here. The State argues that it is no burden to require Plaintiffs and others to sign an affidavit, under penalty of perjury, because visa-holders "can be expected to know" their domicile under Florida law and can do "research" to try to identify covered facilities in areas spanning 75 square miles or more. Resp. 27 &

20

n.7. But the answers to these legal and factual questions are not readily ascertainable for "persons of common intelligence," who risk criminal charges for being wrong. *See Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1301 (11th Cir. 2013). Even the State will not sign a stipulation committing to its view of Plaintiffs' domicile. A334-35. It violates due process to require Plaintiffs and others to swear to matters they cannot reasonably and reliably determine. *See Louisiana v. NAACP*, 366 U.S. 293, 295 (1961).[9]

## II.     Plaintiffs have standing.

The district court correctly rejected the State's argument that none of the Plaintiffs have standing. A331. Because each of the Plaintiffs has shown a "substantial risk" of harm from SB 264, *Susan B. Anthony List*, 573 U.S. at 158, they have standing.

SB 264 subjects the individual Plaintiffs and other would-be purchasers to its affidavit requirement, irrespective of where they are domiciled. That alone places the standing of Plaintiffs Shen, Xu, and Liu beyond doubt. Contrary to the State's claim, Resp. 42 n.10, the affidavit requirement is an "injury resulting from the putatively illegal action" of SB 264, *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The

---

[9] The State cites *SisterSong* in arguing that Plaintiffs must show SB 264 has "no core" to prevail, Resp. 26, but *SisterSong* is inapposite because it was a facial challenge, *SisterSong Women of Color Reprod. Just. Collective v. Gov. of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022). Plaintiffs here must show only that the statute is vague as to them. *Id*. at 1328.

requirement is unlawfully imposed by a preempted state law. It casts stigma and suspicion on any purchaser from China—and, for that matter, on any purchaser who is Asian and suspected of being a "foreign principal" under the law—disadvantaging these buyers in violation of the Fair Housing Act and right to equal protection. And it puts the individual Plaintiffs in the impossible position of being forced "to swear to a fact that [they] cannot be expected to know," in violation of due process. *Louisiana*, 366 U.S. at 295.

As for the State's proffered interpretation of "domicile," its brief does not protect Plaintiffs from the statute's harms. Its argument does not bind the State, prosecutors, or judges who may interpret "domicile" differently based on the prior rulings of Florida's courts. That is precisely why Plaintiffs approached the State several months ago about a stipulation concerning its interpretation of domicile. To date, the State has declined to enter into such an agreement. *See* A334-35 (district court observing that the lack of stipulation is relevant to the "threat-of-enforcement inquiry").

On the merits, each of the individual Plaintiffs is at least "arguably" domiciled in China, *Susan B. Anthony List*, 573 U.S. at 162—and thus faces a substantial risk of prosecution, civil penalties, and discriminatory registration requirements. The district court correctly held that Plaintiffs Shen, Wang, and Liu have shown that they

are arguably domiciled in China, *see* A331, and under Florida common law, Plaintiff Xu has shown the same.

Florida's Supreme Court has described domicile as a "permanent" home. *Minick v. Minick*, 149 So. 483, 487-88 (Fla. 1933); *see Meisman v. Hernandez*, 353 So. 3d 669, 672 (Fla. 2d DCA 2022) (requiring "permanent" intent); A333 (discussing case law). It has also held that nonimmigrant visa holders cannot *legally* form the intent to remain "permanently"—regardless of their subjective hopes—and that even a person granted permission to "stay indefinitely" due to political persecution could not lawfully make Florida his "permanent home." *Juarrero v. McNayr*, 157 So. 2d 79, 80 (Fla. 1963); *see Matter of Cooke*, 412 So. 2d 340, 343 n.1 (Fla. 2019) (similar). There is thus every reason to fear Florida prosecutors and courts would deem Plaintiffs domiciled in China.

In the face of this precedent, the State raises several arguments, none of which protect Plaintiffs. The State blurs the distinction between intending to remain in Florida "permanently" versus "indefinitely," Resp. 42, but this distinction matters under *Juarrero*. And unlike the refugee in *Perez v. Perez*, 164 So. 2d 561, 562 (Fla. 3d DCA 1964), *see* Resp. 43, none of the Plaintiffs are authorized to remain for even an "indefinite" or "unlimited" period. For Plaintiffs Shen, Liu, and Xu, the State focuses on their subjective hope to remain, Resp. 42—without regard to whether they can today "legally formulate the requisite intent" to remain permanently. *Matter*

23

*of Cooke*, 412 So. 2d at 343 n.1. For Plaintiff Wang, the State simply argues that her "extensive ties" to Florida make her a domiciliary, Resp. 42, but given existing Florida law, it is doubtful that courts would reach the same conclusion. F-1 visa-holders like Wang intend—as required under immigration law—to remain only for a discrete time. *See* 8 C.F.R. § 214.2(f)(5)(iv).

The State's argument (briefed for the first time on appeal) that Xu and Shen are protected by the statute's grandfather clause is waived and speculative at best. Resp. 44-45. Even if Plaintiffs may acquire equitable interests by virtue of their contracts, they do not legally *own* anything. *See* 77 Am. Jur. 2d Vendor & Purchaser § 251 (Plaintiffs' executory contracts "convey[] in law no title to the land"); 5 Tiffany Real Prop. § 1258 (3d ed.) (holder of legal title is "actual owner"; legal interests prevail over equitable ones in the same property). Thus, because Xu and Shen do not yet "own" the contracted-for property, they cannot "*continue* to own" the property under the grandfather clause. Fla. Stat. § 692.204(3) (emphasis added). The proposed regulatory interpretation of the grandfather clause, Resp. 45, which is at odds with the text of the statute, would be irrelevant in criminal proceedings because Florida courts must review statutes de novo, *see* Fla. Const. art. V § 21.

Finally, despite the State's attempts to minimize Multi-Choice Realty's evidence, its standing is clear. The undisputed record establishes that many of Multi-Choice's customers, existing and potential, are "domiciled" in China, are neither

citizens nor permanent residents of the United States, and are now prohibited from acquiring property in Florida. A155-57, A310; *see also* A325 (relevant facts not in dispute). The resulting harms to Multi-Choice's business are directly traceable to SB 264. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 926-27 (11th Cir. 2023) (defendant need not be sole cause of injury).

## III.    The equities strongly favor Plaintiffs.

Plaintiffs are suffering irreparable harm from SB 264.

First, Plaintiff Xu's purchase of his new home was unable to close as scheduled in September and has been postponed due to SB 264, depriving him of a unique, irreplaceable property. The State's assertion that this is Plaintiffs' "only" exigency, Resp. 45, is simply incorrect. Shen is unable to close on her contract, A101; Multi-Choice Realty is losing customers and goodwill with each passing day, A155-57, A310; Liu is unlawfully prevented from buying a home, A150-51; and Xu, Wang, and Liu all face imminent discriminatory registration requirements under SB 264, A119-20, A144, A150. The statute also incentivizes housing discrimination through its criminal penalties for sellers—casting suspicion and stigma on any prospective purchaser of Chinese or Asian descent. *See Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) (irreparable harm may be

presumed from housing discrimination). Indeed, some lenders are now refusing to do business with any Chinese national in Florida. A310-20.[10]

For Xu's and Shen's transactions in particular, the sellers' discretion to close at a later date, Resp. 45-46, is immaterial, because each day Plaintiffs are deprived of the property is an irreparable harm. *Cf. Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 789 (11th Cir. 1984) (irreparable injury results from being deprived of "real property and especially a home").

SB 264's affidavit requirement is yet another irreparable harm, as it forces prospective purchasers to attest to their compliance with the law's vague terms, including its "domicile" provision. If someone gets it wrong, she is subject to felony charges, Fla. Stat. § 692.204(8)—deterring countless would-be purchasers from buying homes.

Ultimately, because SB 264 is unconstitutional and unlawful, its enforcement does not serve the public interest. Pls. Br. 53-55. Unlike in *Maryland v. King*, 567 U.S. 1301 (2012), Resp. 46, the State has not argued that home purchases by Plaintiffs or Florida residents like them would harm state security. As the United States has explained, SB 264 "will not advance the State's purported goal of

---

[10] *See* Kimmy Yam, *How DeSantis' Ban on Chinese Homeownership Has Affected Buyers & Real Estate Agents*, NBC News (Oct. 17, 2023), https://perma.cc/QG27-Q36G (describing realtors' questioning of "Asian-looking" people).

increasing public safety." A287. Accordingly, the equities overwhelmingly support the entry of a preliminary injunction.

## IV. The Court should categorically enjoin SB 264's enforcement with respect to residential property.

While Plaintiffs challenge only a limited set of SB 284's prohibitions, *see* Pls. Br. 3 n.2, enforcement of these provisions should be categorically enjoined with respect to residential property. *Contra* Resp. 46. In *Odebrecht*, for example, this Court affirmed the district court's order enjoining the state from "implementing or enforcing *in any way*" the challenged law. *See Odebrecht Const. v. Prasad*, No. 12-cv-22072-KMM (S.D. Fla. June 25, 2012), Dkt. 21 (emphasis added); *see also Inclusive Cmtys.*, 576 U.S. at 539-40 (citing cases broadly enjoining enforcement of ordinances under the FHA, including in suits brought by private parties).

Contrary to the State's claim, Resp. 47, there would be no tension between a categorical injunction here and the Attorney General's power under the FHA. The FHA permits the Attorney General to obtain broad injunctions. *See* 42 U.S.C. § 3614(d)(1)(A). Just as importantly, the FHA was intended to empower private plaintiffs to "act not only on their own behalf but also 'as private attorneys general in vindicating a policy that Congress considered to be of the highest priority.'" *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 211 (1972).

## CONCLUSION

Respectfully, the Court should reverse.

Dated: November 16, 2023

Respectfully submitted,

*/s/ Ashley Gorski*

Keliang (Clay) Zhu
**DEHENG LAW OFFICES PC**
7901 Stoneridge Drive, Suite 208
Pleasanton, CA 94588
(925) 399-5856
czhu@dehengsv.com

Derek L. Shaffer
**QUINN EMANUEL URQUHART &
    SULLIVAN, LLP**
1300 I Street NW, 9th Floor
Washington, D.C. 20005
(202) 538-8000
derekshaffer@quinnemanuel.com

Bethany Y. Li
Elizabeth Koo
Razeen Zaman
**ASIAN AMERICAN LEGAL
    DEFENSE AND EDUCATION
    FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
bli@aaldef.org

Nicholas L.V. Warren
**ACLU FOUNDATION OF FLORIDA**
336 East College Avenue, Suite 203
Tallahassee, FL 32301
(786) 363-1769
nwarren@aclufl.org

Ashley Gorski
Patrick Toomey
Shaiba Rather
Omar Jadwat
Sidra Mahfooz
Noor Zafar
**AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
agorski@aclu.org

Cody Wofsy
**AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION**
39 Drumm Street
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org

Daniel B. Tilley
**ACLU FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
(786) 363-2707
dtilley@aclufl.org

*Attorneys for Plaintiffs–Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies as follows:

1.    This document complies with Fed. R. App. P. 32(a)(7)(B)(ii) because this document contains 6,491 words, which is no more than half of the type volume specified in Fed. R. App. P. 32(a)(7)(B)(i).

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: November 16, 2023         *<u>/s/ Ashley Gorski</u>*
                                        Ashley Gorski
                                        American Civil Liberties Union
                                           Foundation

                                         *Attorney for Plaintiffs–Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2023, the foregoing was filed electronically with the Clerk of Court through the appellate CM/ECF system. I further certify that all parties required to be served have been served.

Dated: November 16, 2023

*/s/ Ashley Gorski*
Ashley Gorski
American Civil Liberties Union
   Foundation

*Attorney for Plaintiffs–Appellants*